ANTONINA ROSATO *v.* TERESITA MASCARDO
(AC 23423)

Lavery, C. J., and DiPentima, and Peters, Js.

Argued October 14, 2003—officially released April 13, 2004

*Edward V. Walsh*, with whom was *John C. Turner, Jr.*, for the appellant (plaintiff).

*Frank H. Santoro*, with whom, on the brief, was *Joyce A. Lagnese*, for the appellee (defendant).

Opinion

DiPENTIMA, J. The principal issue in this medical malpractice case is whether the "continuous treatment" or "continuing course of conduct" doctrine tolls the statute of limitations in General Statutes § 52-584. The plaintiff, Antonina Rosato, brought this action ultimately in two counts against the defendant, Teresita Mascardo, alleging that she suffered damages as a result of the defendant's unauthorized insertion of silicone breast implants during a surgical procedure. The plaintiff appeals from the judgment rendered after the grant-

ing of the defendant's motion for summary judgment as to the first count, which alleged malpractice and which the court found was barred by the statute of limitations, and after the court directed a verdict on the second count, which alleged breach of contract. We affirm the judgment of the trial court in part and reverse it in part.

The facts pertinent to this appeal follow. On February 13, 1989, the defendant performed surgery on the plaintiff. The surgery included bilateral mastopexy[1] with subpectoral breast augmentation, rhinoseptoplasty to repair a deviated septum and repair of diastasis recti.[2] The plaintiff's first postoperative visit with the defendant was on February 20, 1989, at which time the defendant informed her that silicone breast implants had been inserted during surgery.

The action was commenced on November 19, 1992. The plaintiff filed an amended complaint on June 1, 1993, adding to the first count of medical malpractice a second count alleging breach of contract. Both counts addressed the surgical procedures performed by the defendant on February 13, 1989. On June 14, 2002, the defendant filed a motion for summary judgment as to both counts, arguing that the claims were barred by the two year statute of limitations contained in § 52-584.[3] The plaintiff opposed the motion. The court

---

[1] Mastopexy is defined as follows: Plastic surgery to affix sagging breasts in a more elevated and normal position, often with some improvement in shape. Stedman's Medical Dictionary (25th Ed. 1990) p. 926.

[2] The plaintiff testified in her deposition that she was completely satisfied with the nasal surgery, and that claim in the complaint was not pursued. The plaintiff makes no claim in this appeal regarding the abdominal surgery.

[3] General Statutes § 52-584 provides in relevant part: "No action to recover damages for injury to the person . . . caused by negligence . . . or by malpractice of a physician . . . shall be brought but within two years from the date when the injury is first sustained or discovered . . . and except that no such action may be brought more than three years from the date of the act or omission complained of . . . ."

granted the motion as to the medical malpractice count and denied it as to the breach of contract count. The case proceeded to trial before the jury on the breach of contract claim. Prior to the close of the plaintiff's case, the court directed a verdict for the defendant. This appeal followed.

I

The plaintiff first claims that the court improperly granted the defendant's motion for summary judgment on the first count. The plaintiff argues that the court improperly concluded that neither the continuing course of conduct doctrine nor the continuing treatment doctrine tolled the statute of limitations to save the medical malpractice count. The issue that we address here is whether either doctrine applies to toll the statutory period *after* the plaintiff has discovered her injury.[4] We disagree with the plaintiff and hold that neither doctrine is applicable because she discovered her injury five days after the tortious act occurred.

As a preliminary matter, we note that the issue is before us pursuant to the granting of a motion for summary judgment. "[T]he scope of our review of the granting of a motion for summary judgment is plenary. . . . In seeking summary judgment, it is the movant who has the burden of showing the nonexistence of any issue of fact. . . . Although the party seeking summary judgment has the burden of showing the nonexistence of any material fact . . . a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue. . . .

"Practice Book § 17-49 . . . requires that judgment shall be rendered forthwith if the pleadings, affidavits

---

[4] The plaintiff makes no claim of fraud or equitable estoppel.

and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. A material fact is a fact that will make a difference in the result of the case. . . . The facts at issue are those alleged in the pleadings. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue as to all the material facts, which, under applicable principles of substantive law, entitle him to a judgment as a matter of law. . . . The party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The test is whether a party would be entitled to a directed verdict on the same facts. . . . A motion for summary judgment is properly granted if it raises at least one legally sufficient defense that would bar the plaintiff's claim and involves no triable issue of fact." (Citation omitted; internal quotation marks omitted.) *Rosenfield* v. *Rogin, Nassau, Caplan, Lassman & Hirtle, LLC*, 69 Conn. App. 151, 156–57, 795 A.2d 572 (2002).

For purposes of summary judgment and this appeal, the court views the evidence in the light most favorable to the plaintiff. In her affidavit filed in opposition to the defendant's motion for summary judgment, the plaintiff averred the following. At her first postoperative meeting when she was told of the insertion of the silicone breast implants, she was furious and demanded their immediate removal. The defendant told the plaintiff that she would remove the breast implants free of charge after the plaintiff healed and when the defendant's new surgical center was completed. At her second postoperative visit, the plaintiff again informed the defendant that she wanted the implants removed immediately. The

defendant told her that they would be removed as soon as the plaintiff was physically ready. In March, 1989, the defendant removed stitches to some or all of the plaintiff's surgical sites. Also in March, the plaintiff complained that she felt a lump in her right breast and that her right breast stayed up high while her left breast drooped. To correct that problem, the defendant wanted to make an incision in the plaintiff's breast. The plaintiff refused and reiterated to the defendant that she wanted the breast implants removed immediately. During monthly visits in April, May and July, 1989, the defendant examined the plaintiff's breasts and told her that as soon as her new surgical center opened, she would remove the implants. The plaintiff stopped by the defendant's office often between July, 1989, and August, 1992, to inquire about scheduling the removal surgery. During those visits, the defendant comforted the plaintiff and told her to be patient. She also told her that she would remove the implants as soon as the surgical center was open.

In August, 1992, the defendant informed the plaintiff that the operating room at the defendant's surgical center was complete. The defendant agreed to schedule the surgery. At the scheduling meeting, the defendant told the plaintiff that the cost of the silicone implant removal surgery was $4000. The plaintiff refused to pay, and the defendant refused to remove the implants for free. The plaintiff never returned to the defendant's care after August, 1992.

The applicable statute of limitations, § 52-584, imposes two specific time requirements on plaintiffs. The first requirement, referred to as the discovery portion, and the only portion applicable in this case, "requires a plaintiff to bring an action within two years from the date when the injury is first sustained *or discovered* or in the exercise of reasonable care should have been discovered . . . . The second provides that

in no event shall a plaintiff bring an action more than three years from the date of the act or omission complained of . . . ." (Emphasis added; internal quotation marks omitted.) *Nardi* v. *AA Electronic Security Engineering, Inc.*, 32 Conn. App. 205, 210–11, 628 A.2d 991 (1993). The three year period specifies the time beyond which an action under § 52-584 is absolutely barred, and the three year period is, therefore, a statute of repose. See *McDonald* v. *Haynes Medical Laboratory, Inc.*, 192 Conn. 327, 334, 471 A.2d 646 (1984).

The parties agree that the date of discovery was February 20, 1989, the date the plaintiff learned that the defendant had surgically inserted silicone breast implants. Therefore, under the discovery portion of § 52-584, the plaintiff was required to bring her action on or before February 20, 1991.

The plaintiff bases her claim of tolling on the parties' relationship through August, 1992, which allegedly implicates either the continuous treatment doctrine or the continuing course of conduct doctrine. Under the continuous treatment doctrine, the statute does not begin to run until the course of treatment giving rise to the injuries is terminated. See *Blanchette* v. *Barrett*, 229 Conn. 256, 274, 640 A.2d 74 (1994). Under the continuing course of conduct doctrine, the statute of limitations is tolled when there is evidence of a breach of duty that remained in existence after the initial or original wrongful conduct. Id., 275.

The policies underlying both doctrines are similar. "The continuing course of conduct doctrine reflects the policy that, during an ongoing relationship, lawsuits are premature because specific tortious acts or omissions may be difficult to identify and may yet be remedied. . . . For example, *the doctrine is generally applicable under circumstances where [i]t may be impossible to pinpoint the exact date of a particular negligent act*

*or omission that caused injury* or where the negligence consists of a series of acts or omissions and it is appropriate to allow the course of [action] to terminate before allowing the repose section of the statute of limitations to run . . . ." (Citation omitted; emphasis added; internal quotation marks omitted.) *Sanborn* v. *Greenwald*, 39 Conn. App. 289, 295–96, 664 A.2d 803 (1995), cert. denied, 235 Conn. 925, 666 A.2d 1186 (1995). "Similarly, [t]he policy underlying the continuous treatment doctrine seeks to maintain the physician/patient relationship in the belief that the most efficacious medical care will be obtained when the attending physician remains on a case from onset to cure." (Internal quotation marks omitted.) *Blanchette* v. *Barrett*, supra, 229 Conn. 276.

In *Blanchette*, our Supreme Court applied the continuing course of conduct doctrine to toll the three year repose section of § 52-584 because of evidence that the defendant physician had failed to satisfy his duty of monitoring the plaintiff's questionable breast condition. Id., 265. The court considered that to be later wrongful conduct that related to the defendant's diagnosis of the plaintiff.

Similar to *Blanchette*, other medical malpractice cases in which the course of conduct doctrine has been applied involved the conduct of the defendant *prior to the discovery of injury* by the plaintiff. Those cases all concerned injuries discovered beyond the three year repose section of § 52-584. See, e.g., *Witt* v. *St. Vincent's Medical Center*, 252 Conn. 363, 372, 746 A.2d 753 (2000) (genuine issue of material fact as to whether defendant had continuing duty to plaintiff following defendant's alleged initial misdiagnosis); *Cross* v. *Huttenlocher*, 185 Conn. 390, 401–402, 440 A.2d 952 (1981) (statute of limitations tolled because of negligent failure of physician to warn patient of harmful side effects of drug that physician prescribed and patient continued to ingest over period of time); but see *Connell* v. *Colwell*, 214

Conn. 242, 255, 571 A.2d 116 (1990) (statute of limitations not tolled because defendant had no duty to warn after plaintiff discovered injury); *Giambozi* v. *Peters*, 127 Conn. 380, 385–86, 16 A.2d 833 (1940) (statute of limitations not tolled where there was no subsequent treatment or neglect and injury occurred at time of operation because statute of limitations began running at date of wrongful act), overruled in part on other grounds, *Foran* v. *Carangelo*, 153 Conn. 356, 360, 216 A.2d 638 (1966); see also *Giglio* v. *Connecticut Light & Power Co.*, 180 Conn. 230, 242, 429 A.2d 486 (1980) (statute of limitations tolled because installer of pilot light gave repeated instructions as to its use in response to multiple complaints by plaintiff); *Handler* v. *Remington Arms Co.*, 144 Conn. 316, 321, 130 A.2d 793 (1957) (statute of limitations tolled by defendant manufacturer's continuing failure to warn of potential danger associated with inherently dangerous cartridge of ammunition).

In *Connell* v. *Colwell*, supra, 214 Conn. 255, our Supreme Court refused to apply the tolling doctrine because the court held that the defendant's duty ends when the cause of action accrues. The plaintiff here claims that under the reasoning of *Connell*, the statute of limitations should have been tolled because to provide the most efficacious medical care, a physician should remain on the case from onset to cure. The conduct that the plaintiff claims implicates either the continuing course of conduct or continuous treatment doctrine occurred *after* the plaintiff discovered the injury or actionable harm.

When applying § 52-584 to determine whether an action was timely commenced, this court has held that "an injury occurs when a party suffers some form of actionable harm. . . . Actionable harm occurs when the plaintiff discovers . . . that he or she has been injured and that the defendant's conduct caused such

injury. . . . The statute begins to run when the plaintiff discovers some form of actionable harm, not the fullest manifestation thereof. . . . The focus is on the plaintiff's knowledge of facts, rather than on discovery of applicable legal theories." (Citations omitted; internal quotation marks omitted.) *Mountaindale Condominium Assn., Inc.* v. *Zappone*, 59 Conn. App. 311, 323, 757 A.2d 608, cert. denied, 254 Conn. 947, 762 A.2d 903 (2000). Most importantly, the continuing course of conduct doctrine has no application after the plaintiff has discovered the harm. Id., 327–32; *Rivera* v. *Fairbank Management Properties, Inc.*, 45 Conn. Sup. 154, 160, 703 A.2d 808 (1997) (policy behind continuing course of conduct doctrine, which is to provide opportunity to remedy potential harm, no longer has any force once harm discovered).

The *Rivera* court's reasoning is persuasive. Accordingly, we find that as a matter of law, both tolling doctrines apply only to the repose portion of the statute and not to the discovery portion. The discovery portion addresses the plaintiff's knowledge of the injury and not the defendant's act or omission. Once the plaintiff has discovered her injury, the statute begins to run. Moreover, after the discovery of actionable harm, the policy behind either doctrine, that is, the preservation of a continuing physician-patient relationship to remedy the created harm, is no longer served. Id.

Furthermore, the accrual of the cause of action is a singular moment in time. Allowing that point in time to be pushed forward as long as it is claimed that the negligent conduct continued would eviscerate the policies underlying the statute of limitations. The plaintiff would be allowed to acquiesce in the defendant's conduct as long as it was convenient to the plaintiff. That would undermine the promotion of "finality in the litigation process"; (internal quotation marks omitted) *Billerback* v. *Cerminara*, 72 Conn. App. 302, 309, 805 A.2d

757 (2002); and the prevention of the "unexpected enforcement of stale claims concerning which the persons interested have been thrown off their guard by want of prosecution." *Zapata* v. *Burns*, 207 Conn. 496, 508, 542 A.2d 700 (1988).

In her argument that the tolling doctrines apply to her action, the plaintiff relies on *DeLeo* v. *Nusbaum*, 263 Conn. 588, 821 A.2d 744 (2003). *DeLeo* was a legal malpractice action that was based on a claim that the defendant attorneys negligently had entered into a stipulated agreement in which the plaintiff was allowed only supervised visits with his children. Id., 589–90. The trial court ruled that the statute of limitations in § 52-577 could not be tolled because there was no continuing attorney-client relationship within three years of the commencement of the action. Id., 590–91. The Supreme Court determined that the plaintiff's act of sending a letter to his wife did not unequivocally indicate that he had terminated the attorney-client relationship. Id., 600. The Supreme Court reversed the judgment and remanded the case to the trial court to allow the plaintiff to offer evidence that he had had no knowledge of the defendant's negligence.

The court in *DeLeo* held that "a plaintiff may invoke the [continuous representation] doctrine, and thus toll the statute of limitations, when the plaintiff can show: (1) that the defendant continued to represent him with regard to the same underlying matter; *and* (2) either that the plaintiff did not know of the alleged malpractice *or* that the attorney could still mitigate the harm allegedly caused by that malpractice during the continued representation period." (Emphasis in original.) Id., 597. The plaintiff here relies on that language to argue that even though she knew of the harm, the physician's offer to mitigate damages by performing the corrective surgery free of charge satisfied prong two of the *DeLeo*

analysis, and that therefore, the statute of limitations should have been tolled.

*DeLeo* is distinguishable from the present case. First, the statute at issue in *DeLeo*, General Statutes § 52-577,[5] is not at issue in this case. "The three-year limitation of § 52-577 is applicable to all actions founded upon a tort which do not fall within those causes of action carved out of § 52-577 and enumerated in § 52-584 or another section." *Collens* v. *New Canaan Water Co.*, 155 Conn. 477, 491, 234 A.2d 825 (1967). Because medical malpractice is specifically enumerated in § 52-584, § 52-577 is inapplicable to cases of medical malpractice.

Moreover, § 52-577 differs from § 52-584 in a significant way. Section 52-577 is solely a repose statute and contains no discovery provision. The repose portion of § 52-584 is not at issue in this case. Accordingly, the analysis and application of tolling doctrines in *DeLeo* as to § 52-577 do not guide us in our analysis and application of tolling doctrines as to § 52-584.

Further, the holding of *DeLeo* is quite limited. In a footnote, the court explicitly limited its holding to "cases in which an attorney is alleged to have committed malpractice during the course of litigation." *DeLeo* v. *Nusbaum*, supra, 263 Conn. 597 n.4. Because the breadth of the holding was limited even within the context of legal malpractice, this court declines to read that holding expansively and to apply it to cases involving medical malpractice.

On the basis of our review of the law addressing the application of tolling doctrines to § 52-584, we agree with the trial court's decision that because the plaintiff brought her malpractice claim more than two years after she discovered her actionable harm, her claim is

[5] General Statutes § 52-577 provides: "No action founded upon a tort shall be brought but within three years from the date of the act or omission complained of."

barred. The plaintiff is unable to show that any material issue of fact exists as to the application of either doctrine to toll the statute of limitations. Accordingly, we affirm the decision of the trial court in granting the defendant's motion for summary judgment with respect to count one of the plaintiff's complaint.

## II

The plaintiff next claims that the court improperly directed a verdict for the defendant on count two of the complaint prior to the conclusion of the plaintiff's case. Specifically, the plaintiff claims that the court improperly determined that she was required to present expert testimony on causation. We conclude that the court improperly directed the verdict before the conclusion of the plaintiff's case-in-chief.

"The standards for reviewing a challenge to a directed verdict are well known. Generally, litigants have a constitutional right to have factual issues resolved by the jury. . . . Directed verdicts [therefore] are historically not favored and can be upheld on appeal only when the jury could not have reasonably and legally reached any other conclusion. . . . We review a trial court's decision to direct a verdict for the defendant by considering all of the evidence, including reasonable inferences, in the light most favorable to the plaintiff. (Internal quotation marks omitted.) *Young* v. *Rutkin*, 79 Conn. App. 355, 363, 830 A.2d 340, cert. denied, 266 Conn. 920, 835 A.2d 60 (2003).

Practice Book § 16-37 permits a party to seek a directed verdict "at any time after the close of the plaintiff's case in chief . . . ." That section indicates that directed verdicts may be considered at the close of the plaintiff's case-in-chief. There is one case, however, in which the court found noncompliance with the rule of practice to be acceptable. In *Krevis* v. *Bridgeport*, 262 Conn. 813, 824, 817 A.2d 628 (2003), our Supreme Court

found no abuse of discretion in the trial court's resolution of a dispositive question of law prior to the close of the plaintiff's case. In that case, the court allowed the early determination on the basis of a waiver by the plaintiff. There was no such waiver in the present case.

Prior to the close of the plaintiff's case-in-chief, the court, without a motion from the defendant, directed the verdict for the defendant, stating: "I think that it is my obligation here that there's no possibility that the plaintiff can make [her] case in view of the fact that there is no medical evidence to explain the consequential nature of the damages here, the subsequent surgery, so I'm going to direct the verdict." In directing the verdict, the court did not address the issue of compensatory damages. The court continued, stating: "So, I have determined that the plaintiff will be unable to make her case based on the testimony elicited from the defendant, Dr. Mascardo, who would *probably* be the only doctor who would testify in this case." (Emphasis added.)

The defendant asserts that the court properly directed the verdict because the plaintiff had not met her legally required burden with respect to proof of damages. In *Celentano* v. *Grudberg*, 76 Conn. App. 119, 125–26, 818 A.2d 841, cert. denied, 264 Conn. 904, 823 A.2d 1220 (2003), in the context of legal malpractice, this court determined that expert testimony is required to prove damages regardless of whether the action proceeds in contract or in tort. We find that reasoning applicable to medical malpractice claims proceeding on a contract theory as well. In light of our decision as to the procedural impropriety of the verdict on that count, we do not determine the need for expert testimony in the plaintiff's claims for damages.

The plaintiff has a right to have factual issues resolved by the jury. The plaintiff had not been given the opportu-

nity to establish a prima facie case for damages. Therefore, we hold that the court improperly directed the verdict prior to the close of the plaintiff's case.

### III

As an alternate ground for affirmance, the defendant claims that summary judgment should have been granted as to the second count of the plaintiff's amended complaint. Specifically, the defendant claims that the plaintiff's contract claim should have been dismissed because (1) it was not a claim for the breach of a promise to achieve a specific result and (2) it sought tort damages as opposed to contract damages. Because we conclude that issues of fact exist, we disagree.

The court's decision on a motion for summary judgment is a legal determination. Therefore, our review on appeal is plenary. *Faigel* v. *Fairfield University*, 75 Conn. App. 37, 40, 815 A.2d 140 (2003).

The defendant argues that Connecticut law does not recognize a medical malpractice claim that proceeds on a contract theory unless there has been a claim of a breach of a promise to achieve a particular result and, because that was not claimed here, summary judgment should have been granted on count two. We are not persuaded.

It is possible for a negligence claim and a contract claim to arise out of the same facts, and a breach of contract claim may be heard in the same case claiming medical malpractice. See *Janusauskas* v. *Fichman*, 68 Conn. App. 672, 676–78, 793 A.2d 1109 (2002), rev'd in part on other grounds, 264 Conn. 796, 826 A.2d 1066 (2003). "Whether the plaintiff's cause of action is one for malpractice depends upon the definition of that word and the allegations of the complaint. . . . Malpractice is commonly defined as the failure of one rendering professional services to exercise that degree of

skill and learning commonly applied under all the circumstances in the community by the average prudent reputable member of the profession with the result of injury, loss, or damage to the recipient of those services . . . ." (Citations omitted; internal quotation marks omitted.) *Barnes* v. *Schlein*, 192 Conn. 732, 735, 473 A.2d 1221 (1984). The elements of a breach of contract action are "the formation of an agreement, performance by one party, breach of the agreement by the other party and damages." *Bouchard* v. *Sundberg*, 80 Conn. App. 180, 189, 834 A.2d 744 (2003).

In count two of her complaint, the plaintiff claimed that she had not received the medical procedure for which she had bargained. She alleged that she had bargained for a breast lift and instead received a breast lift *and* silicone implants. A careful reading of the complaint shows that count two did not allege negligence or malpractice as part of the cause of action. Rather, count two specified alleged acts of the defendant that would constitute a deviation from the alleged agreement between the parties. Furthermore, the court considered the language of the complaint and found that "[t]here is no dispute that the second count does invoke contract language." Accordingly, we conclude that count two was a contract claim rather than a medical malpractice claim.

The defendant argues that courts in Connecticut have generally disallowed contract claims in medical malpractice actions when they do not contain a claim for breach of a promise to achieve a particular result. We read the cases relied on by the defendant for that proposition differently. In those cases, the courts restricted the contract claims not because the plaintiffs did not plead a failure to achieve a particular result, but because their claims sounded in malpractice and failed to disclose any breach of a contractual duty owed to them by the defendants. See *Barnes* v. *Schlein*, supra, 192

Conn. 735 (complaint sounded in negligence because "gravamen of the suit was the alleged failure by the defendant to exercise the requisite standard of care"); *Rumbin* v. *Baez*, 52 Conn. App. 487, 491–92, 727 A.2d 744 (1999) (claim "essentially a medical malpractice claim clothed in the language of contract" because there was "no allegation of a breach of a contractual duty"); *DiMaggio* v. *Makover*, 13 Conn. App. 321, 323, 536 A.2d 595 (1988) (complaint sounded in malpractice and was "absolutely barren of any allegation that the defendant breached any contractual duty owed to [the plaintiff]"); *Shuster* v. *Buckley*, 5 Conn. App. 473, 478, 500 A.2d 240 (1985) (language of complaint sounded in tort, not contract). The plaintiff's claim did not suffer from the infirmities of those cases. The plaintiff alleged the breach of an agreement as to a medical procedure. Because there are issues of fact as to the alleged breach of contract, the defendant's argument must fail.

The judgment is reversed only as to the directed verdict on the second count and the case is remanded for further proceedings on that count in accordance with law.

In this opinion the other judges concurred.