## DAVID DELEO *v.* EDWARD NUSBAUM ET AL.*

Superior Court, Judicial District of Stamford-Norwalk
File No. CV-96-0153309 S

Memorandum filed June 22, 2004

* Affirmed. *DeLeo* v. *Nusbaum*, 276 Conn. 143, 883 A.2d 1239 (2005).

*Edward N. Lerner*, for the plaintiff.

*Paul E. Pollock*, for the defendants.

TIERNEY, J. This memorandum is the trial court's decision from the remand of the Supreme Court: "The judgment is reversed and the case is remanded to the trial court for further proceedings according to law." *DeLeo* v. *Nusbaum*, 263 Conn. 588, 601, 821 A.2d 744 (2003).

I

FACTS

The court finds the following facts. The plaintiff, David DeLeo, brought this action against the defendants, Edward Nusbaum, an attorney, and the law firm of Nusbaum and Parrino, P.C., in which Nusbaum is a principal. The plaintiff claimed that the defendants had failed to represent him adequately in a dissolution action brought by his wife. The plaintiff commenced this action against the defendants by service of process on June 27, 1996. In his complaint, he alleged that twelve acts or omissions by the defendants constituted negligence. Specifically, the plaintiff claimed that the defendants negligently had entered into a stipulated agreement on behalf of the plaintiff in which the plaintiff was permitted only supervised visitation with his children. In answering the plaintiff's complaint, the defendants denied those allegations and asserted as a special defense that the plaintiff's claims were time barred by General Statutes § 52-577, which provides: "No action founded upon a tort shall be brought but within three years from the date of the act or omission complained

of." Following the close of the plaintiff's case, the defendants moved for a directed verdict, again asserting that the action was barred by the statute of limitations.

With regard to the defendants' statute of limitations claim, the trial court noted that all of the allegedly negligent acts and omissions were alleged to have occurred in 1992, outside the three year period required by § 52-577. The court then considered the plaintiff's claim that the statute of limitations was tolled in the present case under the continuing course of conduct doctrine or the continuous representation doctrine. After concluding that the continuing course of conduct doctrine was inapplicable factually, the trial court considered the potential applicability of the continuous representation doctrine, under which the statute of limitations in legal malpractice cases may be tolled while the legal representation continues.

Apparently aware, at the time at which it rendered its decision, that there was no appellate case law in this state recognizing the continuous representation doctrine, the court assumed that the doctrine was equivalent to the course of treatment rule. Under the course of treatment rule, which we have recognized in the context of medical malpractice, the statute of limitations may be tolled during the course of treatment.

The trial court, thus, concluded that the statute of limitations could be tolled in the present case only insofar as the present case met requirements that the court believed were analogous to those imposed by the course of treatment rule. The court concluded that the jury could not reasonably have found that there was a continuing attorney-client relationship between the plaintiff and the defendants within three years of commencement of the action sufficient to toll the statute of limitations in this case. Accordingly, the court granted the defendants' motion for a directed verdict

on the ground that the action was barred by the statute of limitations. Thereafter, the plaintiff appealed to the Appellate Court from the judgment of the trial court, and the Supreme Court transferred the appeal to itself pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1. The Supreme Court reversed the judgment of the trial court. *DeLeo* v. *Nusbaum*, supra, 263 Conn. 589–93.

In the decision released on May 20, 2003, in this case, the Supreme Court adopted for the first time the continuous representation doctrine. "Thus, today we join the majority of states that have adopted the continuous representation doctrine. . . . Under the rule we adopt today, a plaintiff may invoke the doctrine, and thus toll the statute of limitations, when the plaintiff can show: (1) that the defendant continued to represent him with regard to the same underlying matter; and (2) either that the plaintiff did not know of the alleged malpractice or that the attorney could still mitigate the harm allegedly caused by that malpractice during the continued representation period." (Citation omitted.) Id., 597.

In reviewing the facts of the underlying case, the Supreme Court stated that the first prong of the continuous representation doctrine, as stated previously, had been found as a matter of law. On remand, this court will not discuss the first prong, which is "that the defendant continued to represent [the plaintiff] with regard to the same underlying matter . . . ." Id.

The Supreme Court found there were two alternative methods of proving the second prong, either knowledge or mitigation. The Supreme Court adopted the trial court's finding that "the plaintiff had admitted that the defendants could not have mitigated the damage allegedly caused by their negligence in 1992." Id., 600. On remand, this court will not discuss that portion of the second prong concerning mitigation.

The only remaining issue on remand relates to the alternative portion of the second prong of the continuous representation doctrine, which is "that the plaintiff did not know of the alleged malpractice . . . ." Id., 597. "Thus, because of the inability to establish mitigation, the plaintiff is required to show that he had no knowledge of the defendants' negligence." Id., 600.

The Supreme Court gave the trial court the following guidance: "The plaintiff has not presented any evidence on this issue, nor was it considered by the trial court, because the plaintiff and the trial court reasonably did not understand the rule to require such evidence. Under these circumstances, we conclude that it is proper to reverse the judgment of the trial court and remand the case to that court with direction to consider, in light of the continuous representation doctrine we adopt today, whether the plaintiff's claim is barred by the statute of limitations." Id., 600–601.

## II

## PROCEDURAL HISTORY ON REMAND

In accordance with the remand, this court ordered the parties to file a status report as to the nature of the remand proceedings, the length of the proceedings, and the type of the evidence and documents to be submitted on remand. A joint submission of the parties dated August 28, 2003, was filed. That joint submission, signed by both parties, revealed that they had a difference of opinion on a number of remand issues. In the joint submission, the plaintiff contended "that based upon the Supreme Court opinion an evidentiary hearing would be necessary." The defendants contended that "there should be no evidentiary hearing and that the record is complete on the issue."

On September 22, 2003, the court issued written orders and scheduled a status conference on the

remand issues for October 7, 2003. The September 22, 2003 order stated that the trial court may have to determine the answers to eight questions. The parties did agree that neither the trial court nor the parties should seek an articulation or guidance from the Supreme Court on the nature, form or extent of the remand hearing. The remaining seven questions on the September 22, 2003 order were to be resolved by the court. No briefs were required for the October 7, 2003 status conference, nor was any testimony or evidence to be presented. The parties appeared at the October 7, 2003 status conference. The trial court restructured the remaining seven questions into a scheduling order.

The trial court issued a scheduling order on December 18, 2003, and assigned the matter for a remand hearing to be conducted in accordance with the remand of the Supreme Court. The scheduling order stated: "This will be an evidentiary hearing and all counsel must be prepared to present witnesses, documents and transcripts relating to the following issues: (1) What evidence was presented at trial, either documentary, stipulation, admission and/or testimony, on the issue, of plaintiff's knowledge of the defendants' professional negligence? (2) The parties will make a proper showing thereof at the evidentiary hearing, (3) The [c]ourt will apply directed verdict standards to that showing, (4) The [c]ourt will then decide, (a) if a directed verdict should be entered in favor of the defendants on the issue of the plaintiff's knowledge of the defendants' professional negligence and/or, (b) the matter should be submitted to a new evidentiary hearing and/or, (c) whether that new evidentiary hearing should be conducted before a jury, trial judge and/or, (d) who should be the presiding judge at the new evidentiary hearing."

The remand hearing was continued, and a formal remand hearing on the record was held on February 27, 2004, in accordance with the December 18, 2003

scheduling order. The parties were represented by counsel. The trial court presided. Neither party offered any witnesses. One document was marked for identification and is therefore not considered by this court. Five of the exhibits were transcripts of trial testimony of the parties, Nusbaum and the plaintiff. Exhibit one in the remand hearing was an exhibit offered at trial. It is a letter handwritten by the plaintiff to his then wife dated June 22, 1993. That letter was discussed in the Supreme Court decision. See *DeLeo* v. *Nusbaum*, supra, 263 Conn. 600. After oral argument from counsel, the hearing closed on February 27, 2004. The parties waived posthearing memoranda, and relied on the motions and memorandum of law previously filed in November and December, 2003.

## III

## DISCUSSION OF LAW

Paragraph three of the December 18, 2003 scheduling order states: "The [c]ourt will apply directed verdict standards to that showing . . . ." This court is applying the directed verdict standards to the legal issues presented to the court at the February 27, 2004 remand hearing.

"The standards for reviewing a challenge to a directed verdict are well known. Generally, litigants have a constitutional right to have factual issues resolved by the jury. . . . Directed verdicts [therefore] are historically not favored and can be upheld on appeal only when the jury could not have reasonably and legally reached any other conclusion. . . . We review a trial court's decision to direct a verdict for the defendant by considering all of the evidence, including reasonable inferences, in the light most favorable to the plaintiff. . . . A verdict may be directed where the decisive question is one of law or where the claim is that there is insufficient evidence to sustain a favorable verdict." (Internal quotation marks omitted.) *Young* v. *Rutkin*, 79 Conn. App.

355, 363, 830 A.2d 340, cert. denied, 266 Conn. 920, 835 A.2d 60 (2003). *Young* is one of the latest cases to discuss the standards for a directed verdict. It involved a lawsuit in which the plaintiff sought damages for legal malpractice from the defendant attorney, who had represented him in the plaintiff's dissolution of marriage action and in certain postjudgment proceedings.

"[A] directed verdict may be rendered only where, on the evidence viewed in the light most favorable to the nonmovant, the trier of fact could not reasonably reach any other conclusion than that embodied in the verdict as directed." (Internal quotation marks omitted.) *Miller* v. *United Technologies Corp.*, 233 Conn. 732, 752, 660 A.2d 810 (1995); *Hudson United Bank* v. *Cinnamon Ridge Corp.*, 81 Conn. App. 557, 565 n.9, 845 A.2d 417 (2004); see also *DeLeo* v. *Nusbaum*, supra, 263 Conn. 593, 601; *Gagne* v. *Vaccaro*, 255 Conn. 390, 400, 766 A.2d 416 (2001), on appeal after remand, 80 Conn. App. 436, 835 A.2d 491 (2003), cert. denied, 268 Conn. 920, 846 A.2d 881 (2004).

The statute of limitations for legal malpractice actions is § 52-577, which provides: "No action founded upon a tort shall be brought but within three years from the date of the act or omission complained of."

The question of whether a party's claim is barred by the statute of limitations is one of law. *John H. Kolb & Sons, Inc.* v. *G & L Excavating, Inc.*, 76 Conn. App. 599, 609, 821 A.2d 774, cert. denied, 264 Conn. 919, 828 A.2d 617 (2003); *National Loan Investors, L.P.* v. *World Properties, LLC*, 79 Conn. App. 725, 734, 830 A.2d 1178 (2003), cert. denied, 267 Conn. 910, 840 A.2d 1173 (2004). "The issue, however, of whether a party engaged in a continuing course of conduct that tolled the running of the statute of limitations is a mixed question of law and fact." *Giulietti* v. *Giulietti*, 65 Conn. App. 813, 833, 784 A.2d 905, cert. denied, 258 Conn. 946, 947, 788 A.2d

95, 96, 97 (2001). *Giulietti* is a legal malpractice decision.

In a legal malpractice action, as in a medical malpractice action, it is the plaintiff's obligation to present expert testimony in order to prevail; expert testimony concerning the standard of care, the violation of the standard of care and proximate cause. "There is an exception to this rule, however, where there is such an obvious and gross want of care and skill that the neglect is clear even to a lay person." (Internal quotation marks omitted.) *Paul* v. *Gordon*, 58 Conn. App. 724, 727, 754 A.2d 851 (2000); *Pearl* v. *Nelson*, 13 Conn. App. 170, 173, 534 A.2d 1257 (1988). For example, a layperson may be expected to understand that an attorney's failure to attend court proceedings as directed is obvious and gross neglect. *Dubreuil* v. *Witt*, 80 Conn. App. 410, 419, 835 A.2d 477 (2003), cert. granted on other grounds, 268 Conn. 903, 845 A.2d 407 (2004).

The issue on remand is the plaintiff's knowledge of the defendants' malpractice. If the plaintiff knew of the malpractice three years prior to commencing this lawsuit, then the continuing representation theory does not toll the statute under the newly applicable law established by the Supreme Court in *DeLeo* v. *Nusbaum*, supra, 263 Conn. 597. This court believes this issue, involving the continuous representation theory, is analogous to the continuous treatment doctrine in medical malpractice cases as to the knowledge of the plaintiff. In a medical malpractice context, the continuing course of treatment and the continuing course of conduct doctrine share similar supporting rationales. "[T]he policy underlying the continuous treatment doctrine seeks to maintain the physician/patient relationship in the belief that the most efficacious medical care will be obtained when the attending physician remains on a case from onset to cure." (Internal quotation marks omitted.)

*Blanchette* v. *Barrett*, 229 Conn. 256, 276, 640 A.2d 74 (1994).

Under the continuing course of conduct theory of tolling the statute of limitations, there are a series of cases that discuss the "discovery" of the injury by a plaintiff in relation to tolling of the two year statute of limitations under General Statutes § 52-584. This court recognizes that § 52-584 does not apply to legal malpractice actions but to medical malpractice actions and that the legal malpractice statute of limitations, § 52-577, contains no "discovery" component. Regardless of those differences, the discussion of the concept of the plaintiff's knowledge of malpractice is informative. "The statute begins to run when the plaintiff discovers some form of actionable harm, not the fullest manifestation thereof. . . . The focus is on the plaintiff's knowledge of facts, rather than on discovery of applicable legal theories." (Citation omitted; internal quotation marks omitted.) *Mountaindale Condominium Assn., Inc.* v. *Zappone*, 59 Conn. App. 311, 323, 757 A.2d 608, cert. denied, 254 Conn. 947, 762 A.2d 903 (2000); see also *Rosato* v. *Mascardo*, 82 Conn. App. 396, 405, 844 A.2d 893 (2004). "[T]he continuing course of conduct doctrine has no application after the plaintiff has discovered the harm." *Rosato* v. *Mascardo*, supra, 405; *Mountaindale Condominium Assn., Inc.* v. *Zappone*, supra, 327–32.

"The discovery portion addresses the plaintiff's knowledge of the injury and not the defendant's act or omission. Once the plaintiff has discovered her injury, the statute begins to run. Moreover, after the discovery of actionable harm, the policy behind either doctrine, that is, the preservation of a continuing physician-patient relationship to remedy the created harm, is no longer served." *Rosato* v. *Mascardo*, supra, 82 Conn. App. 405; *Rivera* v. *Fairbank Management Properties, Inc.*, 45 Conn. Sup. 154, 160, 703 A.2d 808 (1997).

"Furthermore, actionable harm may occur when the plaintiff has knowledge of facts that would put a reasonable person on notice of the nature and extent of an injury, and that the injury was caused by the negligent conduct of another. . . . In this regard, the harm complained of need not have reached its fullest manifestation in order for the limitation period to begin to run; a party need only have suffered some form of actionable harm." (Citation omitted; internal quotation marks omitted.) *Lagassey* v. *State*, 268 Conn. 723, 749, 846 A.2d 831 (2004); *Catz* v. *Rubenstein*, 201 Conn. 39, 43–50, 513 A.2d 98 (1986).

"Furthermore, the accrual of the cause of action is a singular moment in time. Allowing that point in time to be pushed forward as long as it is claimed that the negligent conduct continued would eviscerate the policies underlying the statute of limitations. The plaintiff would be allowed to acquiesce in the defendant's conduct as long as it was convenient to the plaintiff. That would undermine the promotion of finality in the litigation process . . . and the prevention of the unexpected enforcement of stale claims concerning which the persons interested have been thrown off their guard by want of prosecution. *Zapata* v. *Burns*, 207 Conn. 496, 508, 542 A.2d 700 (1988)." (Citation omitted; internal quotation marks omitted.) *Rosato* v. *Mascardo*, supra, 82 Conn. App. 405–406; *Billerback* v. *Cerminara*, 72 Conn. App. 302, 309, 805 A.2d 757 (2002).

The Appellate Court in *Rosato* did discuss the tolling doctrines and *DeLeo* v. *Nusbaum*, supra, 263 Conn. 588. The court distinguished *DeLeo*; first, because § 52-577 was not involved in *Rosato* and, second, because § 52-577 does not contain either a discovery requirement or a later repose provision. *Rosato* v. *Mascardo*, supra, 82 Conn. App. 407. "Accordingly, the analysis and application of tolling doctrines in *DeLeo* as to § 52-577 do not guide us in our analysis and application of tolling

doctrines as to § 52-584." Id. This court believes that the holdings of *Rivera, Mountaindale Condominium Assn., Inc.,* and *Rosato* are guidance to this trial court on remand because the common issue was the knowledge of the plaintiff. The remand in *DeLeo* concerns whether the plaintiff could show that he had no knowledge of the defendants' negligence. The common issue in the previously discussed medical malpractice cases was the determination of when the plaintiffs obtained knowledge of their injuries.

## IV

## DISCUSSION OF FACTS

Neither party presented any testimonial evidence at the February 27, 2004 remand hearing. The only document admitted as a full exhibit at the remand hearing was also a trial exhibit. The court has not considered the remand exhibit offered for identification. Sections of the trial transcript of the testimony of Nusbaum and the plaintiff were offered. No other evidence was presented at the remand hearing.

The plaintiff argued at the February 27, 2004 hearing that he should be permitted to offer evidence on remand. Included within that offer of proof was material that the plaintiff obtained from a legal seminar he attended in Cleveland, Ohio, in September, 1994. The plaintiff offered to prove that he first learned of the defendants' legal malpractice at the time of the September, 1994 seminar. The September, 1994 seminar material was offered as an exhibit for identification at the remand hearing. A detailed offer of proof was made by the plaintiff. The plaintiff further argued that the legal theory of *continuous representation* was first adopted by the Supreme Court in *DeLeo* v. *Nusbaum,* supra, 263 Conn. 597, and that he therefore had no opportunity to understand what his legal obligation of proof was at the time of trial. The plaintiff further argued that the

Supreme Court ordered on remand that he be permitted to offer evidence and cited the following language of the Supreme Court decision to support that argument. "Thus, because of the inability to establish mitigation, the plaintiff is required to show that he had no knowledge of the defendants' negligence. The plaintiff has not presented any evidence on this issue, nor was it considered by the trial court, because the plaintiff and the trial court reasonably did not understand the rule to require such evidence." Id., 600.

This court did not permit new evidence at the remand hearing for the following reasons: (1) the original trier of fact was the jury, and the Supreme Court did not remand for a new jury trial; (2) the original jury has been discharged; (3) the remand must be strictly followed; (4) the record was sufficiently complete to decide the issue of the plaintiff's knowledge of negligence, utilizing the directed verdict standard; (5) the directed verdict standard does not permit the taking of new evidence; and (6) the December 18, 2003 scheduling order required an analysis under the directed verdict standard before conducting any evidentiary hearing.

This court denied the plaintiff's request on the ground that the remand did not direct a new trial but instead ordered: "[R]emand the case to that court with direction to consider, in light of the continuous representation doctrine we adopt today, whether the plaintiff's claim is barred by the statute of limitations." Id., 600–601. "A similar concern is implicated in civil cases when a motion for a directed verdict is made pursuant to Practice Book § 321 [now § 16-37]. The moving party is entitled to have such a motion decided upon the basis of the evidence that has been presented at the time of the motion." *Wood* v. *Bridgeport*, 216 Conn. 604, 607, 583 A.2d 124 (1990); see also *Kelley* v. *Bonney*, 221 Conn. 549, 563, 606 A.2d 693 (1992).

The Supreme Court's remand stated: "The judgment is reversed and the case is remanded to the trial court for further proceedings according to law." *DeLeo* v. *Nusbaum*, supra, 263 Conn. 601. The trial court must follow the remand order strictly. *Premier Capital, Inc.* v. *Grossman*, 82 Conn. App. 390, 392 n.2, 845 A.2d 442, cert. denied, 271 Conn. 901, 859 A.2d 564 (2004). The remand did not order the trial court to conduct an evidentiary hearing. In other cases, Connecticut appellate courts have stated that the remand requires the trial court to conduct an evidentiary hearing, further findings or a new trial. *Board of Education* v. *Freedom of Information Commission*, 210 Conn. 590, 597, 556 A.2d 592 (1989); *Montanaro Bros. Builders, Inc.* v. *Snow*, 190 Conn. 481, 490–91, 460 A.2d 1297 (1983); *Holland* v. *Holland*, 188 Conn. 354, 363–64, 449 A.2d 1010 (1982); *Johnson* v. *Sourignamath*, 75 Conn. App. 403, 407–408, 816 A.2d 631 (2003); *Hernandez* v. *Monterey Village Associates Ltd. Partnership*, 24 Conn. App. 514, 517, 589 A.2d 888 (1991); Practice Book § 60-2 (1). "In carrying out the mandate of [the appeals] court, the trial court is limited to the specific direction of the mandate . . . ." (Internal quotation marks omitted.) *Premier Capital, Inc.* v. *Grossman*, supra, 392 n.2.

The court considered each of the exhibits offered at the February 27, 2004 hearing on the issue of whether the plaintiff had offered sufficient proof that he had no knowledge of the defendants' malpractice. Reversing that question, this court considers whether the evidence at trial established, using the directed verdict standard, that the jury could draw no other reasonable conclusion but that the plaintiff had knowledge of the defendants' malpractice prior to the running of the statute of limitations. If that rephrased question is answered in the affirmative, then a directed verdict on the special defense of the statute of limitations must be granted.

The court first considered exhibit one, the handwritten letter from the plaintiff to his then wife, dated June 22, 1993. The letter states: "Enclosed please find copy of a letter recently sent to [Robert S. Kruger, a psychologist treating the plaintiff's daughter, Claire]. Since Claire is involved, I felt it fair that you be aware of it. Incidentally, your lawyers have not only committed malpractice in handling this case but are guilty of billing fraud." The letter was signed by the plaintiff "DBD." An asterisk appears after the word "lawyers." Under the signature of DBD, another asterisk appears, stating that "*my lawyer has not done much better."

That letter was discussed by the Supreme Court in *DeLeo* v. *Nusbaum*, supra, 263 Conn. 600. The Supreme Court used that letter in analyzing whether there was a de facto or formal termination of the attorney-client relationship. The court determined: "The act of sending this letter to the plaintiff's wife does not rise to the level of unequivocally indicating that the plaintiff had ceased relying on his attorney's professional judgment in protecting his legal interests and, therefore, as a matter of law, does not constitute a de facto termination of the attorney-client relationship." Id. The Supreme Court did not analyze the letter in regard to whether the plaintiff had knowledge of the defendants' malpractice as of June 22, 1993, the date of the letter.

This court will now conduct such an analysis. The letter specifically uses the word "malpractice." It references the fact that the plaintiff is aware of the legal concept of malpractice as applied to lawyers in this case. He is directly accusing his wife's attorneys of committing malpractice in the handling of various aspects of this case. In addition in the June 22, 1993 letter, he advances not only the allegation of malpractice, but states unequivocally that his wife's attorneys engaged in conduct that exceeds malpractice in that they were "guilty of billing fraud." Evidence introduced

at the jury trial established that the plaintiff followed up on his malpractice charges against his wife's attorneys by filing a complaint with the statewide grievance committee.

By adding the asterisk and the phrase, "my lawyer has not done much better," the plaintiff was adopting the same language and accusations addressed to his wife's attorneys and addressing those complaints to his own attorney, the defendants. The accusation of the wife's attorneys being guilty of malpractice is unequivocal. There is no less equivocation in the phrase by adding the asterisk directed to the defendants. The court is of the opinion that the June 22, 1993 letter could not be understood by any reasonable jury to mean anything other than the fact that as of June 22, 1993, the plaintiff knew of (1) malpractice by his wife's attorneys, (2) billing fraud by his wife's attorneys, (3) malpractice by his attorneys and (4) billing fraud by his attorneys. His only attorney as of June 22, 1993, was Nusbaum of the law firm of Nusbaum and Parrino, P.C.

The plaintiff on June 22, 1993, knew of the defendants' negligence. The three year statute of limitations started to run on June 22, 1993. At the date of the commencement of this legal malpractice lawsuit on June 27, 1996, the statute of limitations, § 52-577, had already run. A jury could not reasonably reach any other conclusion than that contained in the prior three sentences. A directed verdict must be granted.

The trial court examined exhibit two, the transcript of trial testimony by Nusbaum, who was examined by the plaintiff's counsel. The transcript states:

"[The Plaintiff's Counsel]: [The plaintiff] didn't accuse you of malpractice, did he?

"[The Witness]: No, he didn't.

"[The Plaintiff's Counsel]: He didn't accuse you of billing fraud, did he?

"[The Witness]: No, he didn't.

"[The Plaintiff's Counsel]: But the letter prompted you to decide that you didn't want to represent him anymore?

"[The Witness]: Well, when someone makes a statement, 'My lawyer has not done much better,' I am assuming that there is some parallel to his allegations of the firm of Rutkin and Effron [which had represented the plaintiff's wife] that he was trying to lay at my feet, yes. So, based upon that, I assume there were some problems in his assessment of how I was handling his case."

That transcript supports this court's conclusion that no jury could reasonably reach any other conclusion but that the plaintiff knew of the defendants' negligence on June 22, 1993.

The fact that the plaintiff had knowledge of the malpractice on June 22, 1993, is further buttressed by exhibit three, a transcript of trial testimony on direct examination of the plaintiff that was conducted by the plaintiff's counsel. The transcript states:

"[The Plaintiff's Counsel]: . . . Do you recall writing a letter to your wife in which you were critical of her attorneys?

"[The Plaintiff]: Yes.

"[The Plaintiff's Counsel]: And do you recall that in that letter, you said in one phrase that you thought your lawyer wasn't much better?

"[The Plaintiff]: That's right.

"[The Plaintiff's Counsel]: What prompted you to write that letter?

"[The Plaintiff]: A short time before I wrote that letter, there was a meeting in Mr. Nusbaum's office with the lawyer who was appointed to protect my children's interest.

"[The Plaintiff's Counsel]: Was that attorney Diaga Osis?

"[The Plaintiff]: Yes, Diaga Osis, and I remember sitting there in the conference room, and Mr. Nusbaum said, 'Did you know that Effron and Rutkin sent $50,000 worth of business to a guy named Herb Sax,' who I never heard of before, 'and Kruger?' And I just sat there, and I said—I didn't say anything. I said, 'You have got to be kidding me.' Here we have Effron and Rutkin sending all their business to Kruger, and Kruger is running the show. At that time, it really hit me like a ton of bricks. At that time, it really, you know, you go to an expert, you get a specialist, you put your faith in them, you trust them, you pay them money and it was unbelievable.

"[The Plaintiff's Counsel]: Did that lead to some unpleasantness between you and Mr. Nusbaum?

"[The Plaintiff]: Yes.

"[The Plaintiff's Counsel]: Can you tell us how that transpired?

"[The Plaintiff]: I remember that he showed me the letter that I sent to my wife and said, 'What about this?' you know, 'What about this?' And I said, 'You know, I got the shaft here, you know. I am not happy at all. Here we had these ridiculous allegations, there was never any evidence, I mean, nothing, and here I am almost a year later still getting the shaft, you know. I think we ought to part ways.' Words to that effect."

This court's conclusion is further buttressed by the examination of exhibit four, a transcript of the plaintiff's trial testimony on questioning by the plaintiff's counsel:

"[The Plaintiff's Counsel]: But when you sent that letter to your wife, your wife would have assumed upon reading that letter that you thought Dr. Kruger was honest, competent and was to remain as Claire's therapist. Isn't that true?

"[The Plaintiff]: I just can't answer for her, sir.

"[The Plaintiff's Counsel]: And then you go to say, incidentally, your lawyers have not only committed malpractice in handling this case but are guilty of billing fraud. Do you see that?

"[The Plaintiff]: Yes, I see that.

"[The Plaintiff's Counsel]: And you have the asterisk next to lawyers and then down at the bottom you have an asterisk and state: '[M]y lawyer has not done much better.'

"[The Plaintiff]: That is correct.

"[The Plaintiff's Counsel]: So, you are communicating to your wife that her lawyers have committed malpractice and are guilty of billing fraud and that Mr. Nusbaum, who was your lawyer at that time, has not done much better? Isn't that true?

"[The Plaintiff]: That's what I said in the letter, correct.

"[The Plaintiff's Counsel]: And did you mean to imply that Mr. Nusbaum had committed malpractice and was guilty of billing fraud?

"[The Plaintiff]: No, I don't believe Mr. Nusbaum was ever guilty of billing fraud.

"[The Plaintiff's Counsel]: But you didn't separate what you were accusing Mr. Nusbaum in this particular letter, did you?

"[The Plaintiff]: That's true.

"[The Plaintiff's Counsel]: So, again, your wife would have gotten this and assumed that you were accusing Mr. Nusbaum of malpractice and billing fraud, isn't that true?

"[The Plaintiff]: I can't speak for my wife, sir.

"[The Plaintiff's Counsel]: But certainly you could not differentiate the two allegations to either lawyer, did you?

"[The Plaintiff]: That is correct.

"[The Plaintiff's Counsel]: Did you, by the way, give Mr. Nusbaum a copy of this letter? Did you send a copy to him and say, 'Hey, you know, Ed, I am not happy with you, and here is what I have said to my wife?'

"[The Plaintiff]: No."

At the February 27, 2004 remand hearing, the plaintiff claimed that there is a discrepancy in the exhibit four transcript. The trial transcript, offered without objection at the remand hearing, stated as the plaintiff's answer: "No, I don't believe Mr. Nusbaum was ever guilty of billing fraud." The plaintiff claimed the transcript should have read: "No. I don't believe Mr. Nusbaum was ever guilty of billing fraud." The plaintiff is claiming that the answer with a period after "no" would mean that he categorically denied both of the two assumptions in the prior question: (1) Nusbaum had not committed malpractice; and (2) Nusbaum was not guilty of billing fraud.

This court rejects such a conclusion. The plaintiff did not offer the testimony of the court reporter. The original court reporter's notes or audio recordings were not offered. No continuance of the remand hearing was requested by the plaintiff in order to obtain that evidence. There was no follow-up question at trial as to whether the plaintiff knew of the malpractice and,

therefore, the issue of whether "no" was followed by a period or a comma was not asked. In addition, if the word "no" was followed by a period, then the addition of the phrase, "I don't believe Mr. Nusbaum was ever guilty of billing fraud," would be a non sequitur. In that context, the proper answer was, "No, I don't believe Mr. Nusbaum was ever guilty of billing fraud," ("no" followed by a comma, and then the remaining phrase referring to billing fraud). This court believes that the plaintiff's answer is a judicial admission by the plaintiff in the presence of the jury that Nusbaum was guilty of billing fraud and a judicial admission by the plaintiff that on June 22, 1993, the plaintiff knew Nusbaum had committed malpractice. "No" followed by a comma is further buttressed by the language of the asterisk on the June 22, 1993 letter. In this court's opinion, it remains uncontroverted that the plaintiff knew as of June 22, 1993, that the defendants had committed malpractice.

Exhibit five is the trial transcript of direct examination of Nusbaum by the defendants' counsel at page thirty-eight, line twenty-seven through to page thirty-nine, line five. The subject matter of the examination was the June 22, 1993 letter. The specific subject of that testimony at trial was an office conference at Nusbaum's office that was attended by the plaintiff:

"[The Defendants' Counsel]: And you discussed with him, did you not, the contents of both of these letters on June 28?

"[The Witness]: Yes, I did.

"[The Defendants' Counsel]: And do you recall what was discussed during that conference about these letters?

"[The Witness]: Well, with reference to the allegations of malpractice against Rutkin and Effron and billing

fraud, as I indicated earlier, it seemed that he was making the same allegations against me. And he said he wasn't, but I told him that it certainly appeared that you are making a claim that I committed malpractice."

The plaintiff argues that the June 22, 1993 letter is subject to a variety of interpretations. The plaintiff refers in exhibit five to the testimony of Nusbaum, as to the denial by the plaintiff at the June 28 conference, "And he said he wasn't . . . ." That denial was not the subject of further trial examination. The plaintiff never offered evidence on the subject. Even after examination of exhibit five, this court concludes that the jury could not reasonably reach any other conclusion than that (1) the plaintiff had knowledge of the defendants' malpractice on June 22, 1993, (2) the plaintiff commenced this lawsuit on June 27, 1996, more than three years after June 22, 1993, (3) the continuous representation doctrine could not toll the statute of limitations and (4) a verdict for the defendants should be rendered as to the defendants' statute of limitations special defense.

V

CONCLUSION

The court has applied the directed verdict standard to the evidence offered at the February 27, 2004 remand hearing. No evidence was offered to this court at the February 27, 2004 remand hearing that was not offered before the jury at trial. This court now has the understanding of the factors of the continuous representation theory. This court, if it knew of those factors and applied the directed verdict rule to those factors, on the basis of the evidence before the jury at the conclusion of the plaintiff's case, could conclude only that the jury could reasonably find only that the plaintiff had knowledge of Nusbaum's legal malpractice on or before June 22, 1993, and that the plaintiff failed to commence the lawsuit within three years thereafter.

This court concludes, on the basis of the trial evidence and testimony, that the jury could not reasonably reach any other conclusion than that the plaintiff had knowledge of Nusbaum's legal malpractice on June 22, 1993, that the plaintiff commenced this lawsuit on June 27, 1996, more than three years after he obtained that knowledge and that the continuous representation theory does not toll the running of the statute of limitations, § 52-577. This court concludes that it would have granted the directed verdict for the defendants on that basis at trial at the conclusion of the plaintiff's case.

This court therefore directs a verdict in favor of the defendants as against the plaintiff. This order is in compliance with the remand of the Supreme Court.