WINTER, Circuit Judge,
concurring.
Respectfully, I concur in the result.
In my view, the holding that the two-year limitations period in this matter resumed on the date of HUD’s “final letter” is unsupportable as law or policy and quite unnecessary.
“Final letters” are legal non-events. They have no role in the language of the underlying statute or regulations. At the administrative level, sending “final letters” is not a uniform practice of local HUD offices. Some HUD offices, including those in Connecticut and Vermont, two states with local certified agencies that are governed by the decisions of this court, do not send any such letters. Some HUD offices, other than that of New York, do send letters of some kind, but we have no idea what their content is. The practice of the New York HUD office (and any other HUD offices) of sending such letters can change at any time, as can the content of any letters it (or others) sends.
My colleagues give the “final letter” stature as reflecting HUD’s “closing” of a case. However, unlike the local certified agency’s closing of a HUD complaint, a formal act with legal significance, see N.Y. Comp.Codes R. & Regs. tit. 9, § 465.5 (2008); Memorandum of Understanding Between The Department of Housing and Urban Development and the New York State Division of Human Rights §§ IV.G.2, VII.F.6, HUD’s “closing” of a case that has been referred to a local certified agency is another legal non-event. We know that there are no communications to complainants reflecting a HUD “closing” in many states, such as Connecticut and Vermont, and whether any particular date of “closing” can be determined in such states is unknown. “Final letters” and “closings” by HUD are thus acts that may or may not have concrete manifestations and are often indeterminable.
Because a “final letter” and a local HUD “closing” are not regularized events, they may bear no relationship to decisions at a higher level of HUD to pursue or not to pursue a case.[1] Rather, the “closing” is a *217 local bureaucratic act that, on this record, may be no more than moving records to some sort of archive at times that may have more to do with available storage space than with any residual power of HUD to act on a case. I doubt that any court would hold that such a “closing” bars the exercise of HUD’s residual powers. See Note 1, supra.
As a result, designating the sending or receipt of the New York “final letter”/“closing” as resuming the limitations period is inappropriate at both a legal and a pragmatic level. First, the two-year limitations period is the creation of Congress, and the triggering (or re-triggering) events must be determined by an examination of congressional intent. If anything can be said with assurance about the role of New York HUD’s “final letters”/“closings,” it is that these acts cannot possibly have been intended by Congress as the triggering events. “Final letters”/“closings” have no role, much less a regular one, under the statute or relevant regulations; they are simply bureaucratic acts that may or may not occur.
Second, designating the “final letter”/“closing” as a trigger is improvident at a pragmatic level. Limitations periods may work well when a determinable act, such as an act creating liability, triggers the limitations period. E.g., Stuart v. Am. Cyanamid Co., 158 F.3d 622, 627-28 (2d Cir.1998) (discussing a Nebraska statute of repose forbidding product liability suits brought more than ten years after the product that allegedly caused injury was delivered to the end consumer). They also work well where an indeterminable act, such as learning of the act creating liability, triggers the limitations period but a maximum outside period is imposed. E.g., 28 U.S.C. § 1658 (allowing securities fraud claims to be broüght either within two years of the discovery of the facts constituting the violation or no later than five years after the violation); Rosato v. Mascardo, 82 Conn.App. 396, 844 A.2d 893, 897 (Conn.App.Ct.2004) (noting that Connecticut requires medical malpractice plaintiffs to bring an action either within two years of discovering their injury or within three years of the act giving rise to liability— whichever is earlier). Under such rules, courts and parties have some tolerable notice of when actions must be brought.
With this decision, great uncertainty will now prevail in Connecticut and Vermont, where no HUD “final letters” indicating “closings” are sent. My colleagues offer no rationale to guide plaintiffs in those states in determining the final date by which they must bring suit. In fact, their opinion might support a holding that the limitations period never resumes in those states.
Similar problems may arise even in New York if a “final letter” is sent but not received. Moreover, the New York HUD office may decide to stop sending “final letters,” leaving New York plaintiffs reading the present opinion to believe that they can await a “final letter.” If so, we may have to choose between holding that the limitations periods for such plaintiffs never resumed, i.e., were endless, or that such plaintiffs are out of luck because of unknown bureaucratic decisions.
*218 These uncertainties and complexities are entirely avoidable because we can easily hold Ms. Boykin’s complaint to be timely on the grounds of equitable tolling. As a general principle, equitable tolling allows a late filing when a plaintiff “has been pursuing his rights diligently and ... some extraordinary circumstance stood in his way.” Torres v. Barnhart, 417 F.3d 276, 278 (2d Cir.2005) (internal quotation marks omitted). Ms. Boykin’s situation is as compelling as other cases in which we have applied equitable tolling. See Zerilli-Edelglass v. New York City Transit Auth., 333 F.3d 74, 80 (2d Cir.2003) (providing examples such as a plaintiff filing a timely but defective pleading, a defendant misleading the plaintiff regarding the existence of his cause of action, and a plaintiff unable to file on time due to a medical condition or mental impairment).
The principles underlying the doctrine are therefore more than sufficient to support Ms. Boykin’s argument that the limitations period should be equitably tolled. As she stated in her pro se memorandum of law in the district court, Ms. Boykin believed that the “final letter” issued by HUD indicated that the limitations period resumed with that letter and relied on that statement. That belief and reliance was entirely justifiable.
The “final letter” can certainly be viewed as indicating that the two-year period resumed with that letter. There is an ambiguity as to the referent of the words “agency’s decision”' — -the state agency or HUD — and the term “administrative proceeding” certainly can be read in the context in which it was used as referring to the proceeding before HUD. The letter therefore created a situation easily as compelling as a disabling medical condition and warranting the application of equitable tolling.
Moreover, a decision grounded in equitable tolling would have several advantages. First, equitable tolling was a longstanding, well-known doctrine when Congress passed the relevant legislation. Congress can be presumed to have known of it. Disposing of the present matter on equitable tolling grounds does not, therefore, conflict with Congress’ intent. Second, it would avoid all the uncertainties and complexities created by using the “final letter”/“closing” as the triggering date. Other circuits have held that a misleading agency letter can lead to equitable tolling even when the agency is not a party. See e.g., Anderson v. Unisys Corp., 47 F.3d 302, 306-07 (8th Cir.1995) (“[Ejquitable tolling is premised on the plaintiffs excusable neglect, which may or may not be attributable to the defendant .... [W]hen an administrative agency misleads a complainant, particularly one who is without the benefit of counsel, equitable tolling may be justified.”). This approach seems particularly appropriate in view of HUD’s regulations requiring it to inform complainants of their rights. See 24 C.F.R. § 103.100 (requiring HUD to inform individuals whose complaints have been referred to a certified state agency of their rights under the statute of limitations).[2]
*219 For the reasons stated above, I believe that equitable tolling would be a better rationale for our decision. I therefore concur in the result.

. HUD's residual power to act after a local certified agency’s final action is not subject to any effective time limit. The statute provides that when HUD takes further action on a *217 complaint it has previously referred to a certified state agency, it "shall” complete its investigation within 100 days of commencing further action. 42 U.S.C. § 3610(a)(l)(B)(iv). However, HUD may extend its investigation if it is "impracticable” to complete it within the 100 day period. Id. The term "impracticable” has been interpreted so liberally that there is no effective time limitation on the exercise of HUD's residual powers. See Baumgardner v. Sec’y, United States Dep’t of Hous. & Urban Dev., 960 F.2d 572, 578 (6th Cir.1992).

. There is dicta in our circuit suggesting that it is "questionable” whether equitable tolling applies where the agency involved is not the defendant. Vernon v. Cassadaga Valley Cent. Sch. Dist., 49 F.3d 886, 891 (2d Cir.1995). However, the grounds for the decision in Vernon were that the agency letter was clear and the plaintiff had not shown reliance on it. Id.
In Long v. Frank, 22 F.3d 54, 59 (2d Cir. 1994), we stated that a confusing EEOC letter did not amount to "affirmative misconduct” in denying equitable tolling for a claim against the EEOC. However, the decision did not impose a general requirement of affirmative misconduct by a defendant. Rather, Long held that "Long [did] not demonstrate[ ] ... reli[ance].” Id. Also, a requirement of *219 affirmative misconduct by a defendant or an agency would not square with our more general jurisprudence on equitable tolling, which, as noted above, allows the application of tolling against blameless defendants. Cf. Zerilli-Edelglass, 333 F.3d at 80.