In the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST
John R. MAYNARD, Attorney at Law:

OFFICE OF LAWYER REGULATION,
Complainant-Respondent,

v.

John R. MAYNARD, Respondent-Appellant.

Supreme Court

*No. 2008AP417–D. Decided December 29, 2009.*

2009 WI 106

(Also reported in 776 N.W.2d 583.)

¶ 1. PER CURIAM. We review the recommendation of Referee Michael Ash that Attorney John R. Maynard's professional misconduct warrants a 90–day suspension of his license to practice law in Wisconsin and that he bear the costs of these disciplinary proceedings.[1] The Office of Lawyer Regulation's (OLR) four-count disciplinary complaint alleged Attorney Maynard failed to notify his former law firm of payments for legal services that he received and deposited in his personal account. The complaint also alleged Attorney Maynard made false and misleading communications when he failed to identify his "of counsel" status when he used law firm stationery and when he represented on a postal application that he was a principal of the law firm. The referee concluded the OLR proved three of the four counts charged in the disciplinary complaint.

¶ 2. We approve and adopt the referee's findings and conclusions. We determine the seriousness of Attorney Maynard's misconduct warrants a 90–day suspension of his law license. By his misconduct, Attorney Maynard has demonstrated dishonesty contrary to his

---

[1] Because Attorney Maynard's appeal was dismissed as untimely, the court reviews the matter pursuant to SCR 22.17(2):

> If no appeal is filed timely, the supreme court shall review the referee's report; adopt, reject or modify the referee's findings and conclusions or remand the matter to the referee for additional findings; and determine and impose appropriate discipline. The court, on its own motion, may order the parties to file briefs in the matter.

The court permitted the parties to file briefs, but did not hold oral argument.

professional obligation as a lawyer. We further conclude Attorney Maynard shall bear the costs of these disciplinary proceedings.

¶ 3. Attorney Maynard was admitted to practice law in Wisconsin in 1973 and works in Cedarburg. He has not previously been subject to attorney discipline.

¶ 4. These disciplinary proceedings arise from Attorney Maynard's billings and payments received for services he performed as a shareholder with his former law firm from August 1, 2005, through June 30, 2006. On August 1, 2005, Attorney Maynard joined with Attorneys Bruce McIlnay, James Button, and James Schmitt in the law firm of Maier, McIlnay, Schmitt & Button, Ltd. Soon after, the firm became known as Maynard, McIlnay, Schmitt & Button and used the acronym of MMSB or MMS&B. The referee found that the individuals understood the firm to be a corporation and regarded one another as shareholders. The referee found that when Attorney Maynard became a shareholder at MMS&B, he entered a highly fluid, rapidly changing, and perhaps confusing situation with little discussion among the other shareholders regarding their rights or obligations to the firm. The firm's shareholders testified generally that the money received from clients was "firm income"; the question of how the money would thereafter be divided was never discussed.

¶ 5. The referee found the shareholders intended to practice law in an arrangement through which expenses were to be incurred and paid by the corporate entity and revenues were to be paid to and distributed by that entity. The referee found:

> In particular, [Attorney] Maynard did understand that, during the period of his association with the Firm, invoices for legal services were to be transmitted under the Firm's name, and paid to, and then distributed by

56

the Firm, to its creditors and shareholders, in a manner to be determined.

¶ 6. Attorney Maynard's compensation plan was similar to the other shareholders' plans, consisting of a draw plus a monthly bonus. On or about January 1, 2006, Attorney Maynard's monthly compensation was substantially reduced. When Attorney Maynard announced in the spring of 2006 he would be leaving the firm, he was offered, and agreed to, the opportunity to remain with the firm "of counsel." The referee found that despite the absence of a formal signed agreement, from at least July 1, 2006, until the final parting of ways in February 2007, Attorney Maynard and the firm both understood he was no longer a shareholder but was to have "of counsel" status.

¶ 7. As of July 2006 there remained some open matters on which Attorney Maynard had worked as a shareholder but had not yet been billed. From July 2006 through October 2006 Attorney Maynard transmitted invoices to three clients for legal services he had rendered while he was a shareholder. The invoices all stated, "PLEASE MAIL YOUR PAYMENT TO: MMS&B, P.O. BOX 253, GRAFTON, WI 53024 IN THE ENVELOPE PROVIDED."

¶ 8. Without informing anyone connected with the law firm, Attorney Maynard applied for a post office box, inscribing the form with "John R. Maynard Principal" as the applicant and "MMS&B" as the name to which the box number was to be assigned. The address he gave for the box holder was apparently that of his personal residence. Other firm members did not know Attorney Maynard had opened this post office box. The referee found the invoices were misleading in that they indicated MMS&B would be receiving the money, while only Attorney Maynard knew of and had access to the post office box.

¶ 9. In response to the misleading invoices he sent, Attorney Maynard personally received and deposited into his personal checking account payments from clients totaling $7,776.84. Attorney Maynard did not inform the firm he had received these funds and the firm did not receive any of these funds. The firm did not learn of the post office box or of Attorney Maynard's receipt of the funds until much later as a result of its own efforts.

¶ 10. One check that Attorney Maynard received had been made out to the firm. Although no longer a shareholder but "of counsel," he endorsed the check and kept the proceeds. He had no express authority from the firm to do so; he made the endorsement and kept the money without the firm's knowledge. The referee found that by his testimony, Attorney Maynard acknowledged and understood the money billed for the work he performed as a shareholder was firm income to be divided among all the shareholders after the payment of overhead. The referee concluded that by receiving the funds for services performed while a shareholder, but not notifying the firm about the receipt of those funds and not delivering those funds to the firm or at least to a trustee, the court, or an arbiter, Attorney Maynard violated former SCR 20:1.15(d)(1),[2] as charged in Count 1.

---

[2] Former SCR 20:1.15(d)(1) (effective July 1, 2004, through June 30, 2007) provided:

Upon receiving funds or other property in which a client has an interest, or in which the lawyer has received notice that a 3rd party has an interest identified by a lien, court order, judgment, or contract, the lawyer shall promptly notify the client or 3rd party in writing. Except as stated in this rule or otherwise permitted by law or by agreement with the client, the lawyer shall promptly deliver to the client or 3rd party any funds or other property that the client or 3rd party is entitled to receive.

¶ 11. The referee rejected Attorney Maynard's argument that because the funds were not "client funds" they were not subject to SCR 20:1.15. The referee found nothing in the language of SCR 20:1.15 or in any case law that so narrowly limits the scope of SCR 20:1.15(d). The referee specifically found the express language of SCR 20:1.15(d)(1) broad enough to cover the circumstances in this case.

¶ 12. The referee also rejected Attorney Maynard's claimed defense that he was drastically underpaid by the firm and that the clients he served were his clients. The referee concluded there was no way to determine from the record what amount of revenue Attorney Maynard pocketed should ultimately have been distributed to him had he not intercepted it. The referee said that while some, or perhaps all, of the money should ultimately have gone to Attorney Maynard as he apparently believed, this would not have excused his misconduct. The referee found it was principally Attorney Maynard's misconduct that kept the issue from ever being confronted or appropriately resolved.

¶ 13. In addition, the referee determined that by representing on a postal application form that Attorney Maynard was a "principal" at the firm when he was not, and by sending invoices to clients with the firm's letterhead and directing them to send money to an ostensible firm's post office box to which only he had access, Attorney Maynard falsely indicated to clients that the invoices originated with the firm and that payments would go to the firm, without disclosing that he was no more than "of counsel" with the firm. The referee concluded that by this conduct, Attorney Maynard made false and misleading communications about himself and

his legal services, violating former SCR 20:7.1(a)[3] and former SCR 20:7.5(a),[4] as charged in Count 2.

¶ 14. The referee determined, however, that the facts failed to support a violation of SCR 20:8.4(b),[5] as charged in Count 3. Count 3 alleged that by knowingly and willingly furnishing false information to the United States Postal Service when applying for a post office box, Attorney Maynard committed a federal crime in violation of 18 U.S.C. § 1001(a)(2).[6] The referee concluded this federal statute requires the offending statement to be "materially false."[7] While finding Attorney

---

[3] Former SCR 20:7.1(a) (effective through June 30, 2007) provided, in pertinent part:

A lawyer shall not make a false or misleading communication about the lawyer or the lawyer's services. A communication is false or misleading if it:

(1) contains a material misrepresentation of fact or law, or omits a fact necessary to make the statement considered as a whole not materially misleading; . . . .

[4] Former SCR 20:7.5(a) (effective through June 30, 2007) provided:

A lawyer shall not use a firm name, letterhead or other professional designation that violates Rule 7.1. A trade name may be used by a lawyer in private practice if it does not imply a connection with a government agency or with a public or charitable legal services organization and is not otherwise in violation of Rule 7.1.

[5] SCR 20:8.4(b) provides it is professional misconduct for a lawyer to "commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects; . . . ."

[6] The postal service form Attorney Maynard used stated, "Warning: The furnishing of false or misleading information on this form or omission of information may result in criminal sanctions. . . . 18 U.S.C. 1001."

[7] 18 U.S.C. § 1001(a)(2) provides:

Maynard's use of the term "Principal" to be false and misleading, the referee concluded that materiality had not been proven beyond a reasonable doubt. The referee doubted an individual's inaccurate description of his relationship with a law firm would ever be regarded by the postal service as "material." The OLR does not challenge the referee's conclusions as to Count 3.

¶ 15. Next, the referee found that at the time of the communications, Attorney Maynard was not a principal and would have known, as most lawyers would, that in context "principal" would be taken to mean a person who had controlling authority or a leading position with the firm. The referee found that given Attorney Maynard's "of counsel" status, his use of the term "principal" was deceptive and misleading. The referee concluded that Attorney Maynard's billing scheme involved dishonesty, fraud, deceit, and misrepresentation, contrary to SCR 20:8.4(c)[8] as charged in Count 4. Attorney Maynard does not challenge this determination.

¶ 16. Based on these findings, the referee determined a 90–day license suspension was warranted, together with costs.[9] The referee said that Attorney

---

§ 1001. Statements or entries generally

(a) . . . [W]hoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully—

. . .

(2) makes any materially false, fictitious, or fraudulent statement or representation; or . . .

[8] SCR 20:8.4(c) states it is professional misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation; . . . ."

[9] As of December 22, 2008, the OLR reported costs of $11,313.75.

Maynard's misconduct reflected dishonesty which "seems obvious to everyone except [Attorney] Maynard" and Attorney Maynard remained unrepentant and defiant. The referee also considered that Attorney Maynard's previous record was unblemished and he had fully cooperated with the OLR. In addition, the referee considered that the money involved was not alleged to have been more than $7,776.84. The referee found the misconduct did not harm any clients or threaten the administration of justice.

¶ 17. Attorney Maynard challenges the referee's findings and conclusions with respect to Counts 1 and 2. He also contends the recommended sanction is excessive. While acknowledging his conduct "if viewed in isolation," is a violation of SCR 20:1.15(d) because he failed to transmit the funds, he asserts the rules permit him to hold the disputed portion of the funds until the dispute is resolved, thus relieving him of any wrongdoing. *See* SCR 20:1.15(d)(3) ("If a dispute arises regarding the division of the property, the lawyer shall hold the disputed portion in trust until the dispute is resolved.")

¶ 18. Attorney Maynard argues that an action for an accounting is the proper mechanism to resolve the dispute between the former partners. He nonetheless acknowledges he did not file suit for an accounting before exercising self-help. He admits the firm had an interest in the funds, but says his actions were justified because the firm unilaterally cut him off from the monies to which he was entitled. He says his legal research led him to believe he had the right to keep the funds. He claims that if an accounting action determines he is owed the funds, he could not be charged with an ethics violation. He contends this court and the

OLR should not insert themselves into matters involving a civil dispute among members of a law firm.

¶ 19. Attorney Maynard further contends the term "principal" has various meanings, including a "main participant in a given situation." He argues there is no evidence any person was deceived by his use of the firm's letterhead without identifying his "of counsel" status. Also, he claims, there was no indication he was required to use the words "of counsel" in sending out his bills. He asserts that another attorney with the firm sent out a bill in November 2006, more than four months after MMS&B ceased to exist, and the bill failed to identify Attorney Maynard as "of counsel."

¶ 20. A referee's findings of fact will not be overturned unless they are clearly erroneous. *See In re Disciplinary Proceedings Against Carroll,* 2001 WI 130, ¶ 29, 248 Wis. 2d 662, 636 N.W.2d 718. We independently review a referee's legal conclusions. *Id.* Also, it is our independent responsibility to determine appropriate discipline. *See In re Disciplinary Proceedings Against Reitz,* 2005 WI 39, ¶ 74, 279 Wis. 2d 550, 694 N.W.2d 894. We must consider the seriousness of the misconduct, as well as the need to protect the public, the courts, and the legal system from repetition of misconduct, to impress upon the attorney the seriousness of the misconduct, and to deter other attorneys from engaging in similar misconduct. *See In re Disciplinary Proceedings Against Arthur,* 2005 WI 40, ¶ 78, 279 Wis. 2d 583, 694 N.W.2d 910.

██

¶ 21. Attorney Maynard's arguments fail to demonstrate the referee's findings and conclusions are erroneous. We agree with the referee that SCR 20:1.15(d)(1) applies to the circumstances in this case. Attorney May-

nard does not point to any evidence that he held the disputed funds in trust as permitted by SCR 20:1.15(d)(3), instead, as the referee found, of depositing them into his personal account. Attorney Maynard does not challenge the fact that by directing clients to send money to an ostensible firm's post office box to which only Attorney Maynard had access, he falsely indicated to clients that the invoices originated with the firm and that payments would go to the firm. He does not dispute that as a result of his billing scheme, he received $7,776.84 for work he performed while a shareholder with the firm without notifying the firm, and that he deposited the funds into his personal checking account. Attorney Maynard's allegations regarding other firm members' conduct do not relieve him of his ethical obligations.

■

¶ 22. Under the circumstances, we conclude the referee's recommended sanction is appropriate. We acknowledge Attorney Maynard has never been previously disciplined and has fully cooperated with the OLR's investigation. We disagree, however, with his contention that this matter is simply a dispute between former law partners regarding an accounting of client fees. Attorney Maynard does not seriously dispute the referee's finding that the firm, not Attorney Maynard, had the right to receive and the obligation to distribute fairly the proceeds at issue. While the dispute over the distribution of firm revenue may have served as Attorney Maynard's motivation, his actions were inconsistent with resolving that dispute. *See In re Disciplinary Proceedings Against O'Neil,* 197 Wis. 2d 224, 539 N.W.2d 881 (1995) (attorney engaged in dishonesty, fraud, deceit, and misrepresentation by retaining and failing to report to his law firm legal fees he received for professional services).

¶ 23. The referee reasonably found it was primarily Attorney Maynard's deceptive actions that kept the dispute from being confronted or appropriately resolved. The referee aptly noted, "I know of no legal doctrine or 'law of necessity,' and have not been pointed to any, that excuses lawyers for dishonesty." While considering both aggravating and mitigating circumstances, the referee was reasonably concerned with Attorney Maynard's failure to acknowledge the seriousness of his misconduct. Attorney Maynard's conduct has demonstrated dishonesty incompatible with his professional obligations as a lawyer. The referee's findings justify a sanction sufficient to impress upon Attorney Maynard the seriousness of his misconduct, and to deter others from engaging in similar misconduct.[10] *See In re Disciplinary Proceedings Against Crandall,* 2008 WI 112, ¶ 23, 314 Wis. 2d 33, 754 N.W.2d 501. The referee has not recommended restitution. The OLR does not challenge the referee's recommendation; therefore, we do not address the issue of restitution. We approve and adopt the referee's findings, conclusions, and recommended 90–day suspension.

¶ 24. IT IS ORDERED that the license of John R. Maynard to practice law in Wisconsin is suspended for a period of 90 days, effective February 1, 2010.

¶ 25. IT IS FURTHER ORDERED that within 90 days of the date of this order John R. Maynard pay to the Office of Lawyer Regulation the costs of this proceeding. If costs are not paid within the time specified and absent a showing of his inability to pay the costs

---

[10] As the referee observed, "Whatever ambiguities were in his situation, the deviousness and dishonesty apparent in his conduct should not be met by a mere scolding."

within that time, John R. Maynard's license to practice law in Wisconsin shall remain suspended until further order of the court.

¶ 26. IT IS FURTHER ORDERED that to the extent he has not yet done so, John R. Maynard shall comply with SCR 22.26 regarding the duties of a person whose license to practice law in Wisconsin has been suspended.