Filed 2/26/26  Hyde v. The Grove La Mesa CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| DAVID HYDE,<br><br>    Plaintiff,<br><br>    v.<br><br>THE GROVE LA MESA, INC et al.,<br><br>    Defendant,<br><br>BENJAMIN PAVONE,<br><br>    Objector and Appellant. | D085362<br><br><br><br>(Super. Ct. No. 37-2021-00005732-CU-PO-CTL) |

APPEAL from orders of the Superior Court of San Diego County, Robert C. Longstreth, Judge.  Affirmed.

Pavone & Fonner and Benjamin Pavone for Objector and Appellant.

Purdy & Bailey and Micah L. Bailey for Defendant.


The defendants in the underlying lawsuit brought a motion for sanctions under Code of Civil Procedure sections 128.5 and 128.7 after Benjamin Pavone and his law firm, Pavone & Fonner, LLP, filed a meritless

motion asserting defendants' counsel had engaged in unethical conduct.[1] The trial court granted the motion against Pavone and his firm, but not their client. The court imposed sanctions in favor of the defendants in the amount of $11,725 for the attorney's fees and costs incurred by them to respond to Pavone's baseless motion and sanctions of $5,000 payable to the court as an additional deterrent to prevent further misconduct. On appeal from the orders, Pavone argues his motion prompting the sanctions was meritorious and urges this court to reverse the sanctions for various reasons. As we explain, we reject Pavone's arguments and affirm the trial court's orders. In addition, we conclude Pavone's appeal is frivolous and impose additional sanctions on Pavone in another effort to deter such conduct in the future.

FACTUAL AND PROCEDURAL BACKGROUND[2]

In the lawsuit that underlies this appeal, David Hyde sued his former employer, The Grove La Mesa, Inc., and one of its owners, Sean Patrick McDermott. In his initial complaint, filed in February 2021, Hyde alleged McDermott assaulted, falsely imprisoned, and threatened to kill him. The Grove, McDermott, and another later-added defendant, Sandra Ledesma, filed special motions to strike some of Hyde's claims under section 425.16.[3]

---

[1]    Subsequent undesignated statutory references are to the Code of Civil Procedure.

[2]    In his briefing, Pavone refers extensively to his representation of a litigant in an unrelated probate case in which a member of this court's bench was the judicial officer, and which resulted in an opinion of this court (*Law Offices of Benjamin Pavone, PC v. Willis* (D075817, Nov. 18, 2021)).

[3]    Section 425.16 is commonly referred to as the anti-SLAPP (strategic lawsuit against public participation) statute. (*Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 732, fn. 1.)

The trial court granted the defendants' anti-SLAPP motions on June 30, 2023.

On July 14, 2023, Hyde brought a motion for reconsideration of the anti-SLAPP order. The Grove and McDermott opposed the motion and also brought a motion for sanctions against Hyde under section 128.7. On August 14, 2023, Hyde filed an ex parte application seeking an order requiring McDermott to sit for a deposition "to bolster the case for reconsideration," to shorten time on his pending motion for reconsideration, and for leave to file a supplemental brief in support of the motion. The defendants opposed the ex parte application.

On September 5, 2023, the parties entered a stipulated order awarding the defendants $44,199.55 in attorney's fees and costs incurred in connection with the anti-SLAPP motions under the statute's fee-shifting provision. On January 26, 2024, the trial court denied the motion for reconsideration, finding Hyde had "not presented new or different facts, circumstances, or law sufficient to justify reconsideration of the court's June 30, 2023 ruling granting Defendants' anti-SLAPP motions." The trial court also granted McDermott and The Grove's motion for sanctions, and imposed sanctions of $4,750 against Hyde and Pavone.

Shortly after, on January 29, 2023, counsel for The Grove and McDermott, Micah L. Bailey, sent Hyde's counsel, Pavone, an offer to settle the litigation. The offer included an agreement to release the attorney's fees, costs, and sanctions that were still owed by Hyde to McDermott and The Grove as a result of the defendants' successful anti-SLAPP and sanctions motions. The offer did not include attorney's fees incurred as a result of

---

Hyde alleged that McDermott conspired with Ledesma to concoct false allegations that Hyde had sexually harassed her to provide McDermott with a reason to terminate Hyde's employment.

Hyde's motion for reconsideration, which prompted Pavone to ask defense counsel, Micah L. Bailey, for the amount of attorney's fees incurred opposing the motion for reconsideration so Pavone could "stipulate to that figure." Bailey responded the amount was $13,565, which included "the time [he] spent following [the] filing of the sanctions motion, including in connection with opposing [an] ex parte application to compel discovery" Pavone had asserted was necessary to support his motion for reconsideration.

Pavone responded that the amount seemed too high and asked Bailey to provide "exact billing records." Bailey stated that he would allow Pavone to view the billing records during a "screen share" but would not e-mail his billing records to Pavone as an attachment. On February 7, 2024, Bailey showed Pavone his billing records over a Zoom video conference. Pavone describes the records as 112 Excel spreadsheet entries that totaled $13,565.

The next day, February 8, 2024, Pavone filed a "Motion to Enforce Ethical Violations Against" Bailey. Therein, Pavone asserted Bailey had committed 12 "ethical violations," including violating Civil Code section 1710, Business & Professions Code sections 6068, subdivision (a), and 6106, and Rules of Professional Conduct, rules 1.1(a), 4.1(a), and 8.4(c) by "attempt[ing] to defraud Hyde and Pavone by proposing to charge them" $13,565 for expenses related to Hyde's motion for reconsideration of the anti-SLAPP order. Pavone's motion asked the court to make factual findings in connection with the motion, to require Bailey to produce billing records for the $13,565 in fees he claimed to have incurred, to enjoin Bailey from seeking such fees, "to issue an OSC for Bailey to produce his billing records with respect to the previous anti-SLAPP motion," and to impose sanctions on Bailey of $12,420.

In response to Pavone's motion, on March 14, 2024, Bailey sent Pavone a letter in accordance with the notice provisions of sections 128.5 and 128.7, asserting Pavone's motion was frivolous and brought without any reasonable legal basis or evidentiary support, and was filed with the express intent to cause unwarranted expense. The letter attached an unfiled motion for sanctions and demanded Pavone withdraw his baseless motion within the 21-day grace period afforded by sections 128.5, subdivision (f)(1)(B) and 128.7, subdivision (c)(1). Pavone did not withdraw his motion, and on April 10, 2024, McDermott and The Grove filed their second motion against Pavone and Hyde for sanctions under sections 128.5 and 128.7.

On July 5, 2024, the court denied Pavone's motion asserting ethical violations against Bailey. The court found Hyde and Pavone had "presented no legitimate evidence that [Bailey] engaged in ethical misconduct in this case." The court noted that "[d]espite accusing [Bailey] of fraud based on his own assessment of [the Excel] spreadsheet, [Pavone] admits he 'did not have time or logistic ability to check the math' on the entries." Further, the court stated that Pavone failed to cite any applicable legal authority for the requests in his motion, and that while the court had authority to address ethical misconduct that occurs before it, this authority "does not authorize attorneys to bring adjudicatory motions against opposing counsel accusing them of fraud."

The court also stated that, "[t]o the extent Plaintiff felt the amount of attorney fees sought in a settlement offer was inflated, the appropriate step was to communicate that to Defendants' counsel and respond to the offer accordingly. To the extent Plaintiff believed the amount of sanctions that the court awarded to Defendants was unwarranted or that the attorney fees sought in Defendants' sanctions motion were unreasonable, Plaintiff had an

5

opportunity to be heard before the court made its ruling. To the extent Defendants' accrued attorney fees become relevant in some future motion in this case, Plaintiff will have an opportunity to be heard at that time."

After this ruling, on September 13, 2024, Pavone filed an opposition to McDermott and The Grove's second sanctions motion. Therein, Pavone argued again that Bailey had attempted to defraud him of $13,565. Pavone also argued the trial court misunderstood his "ethics motion" in its denial order and that, contrary to the court's determination, the motion was "comfortably within the court's authority to adjudicate."

On September 25, 2024, the trial court issued a tentative ruling granting in part and denying in part McDermott and The Grove's motion for sanctions. The court found that Pavone's motion to enforce ethical violations against Bailey was "totally devoid of merit and thus frivolous within the meaning of" section 128.5, subdivision (b)(2), and "the motion's legal contentions were not 'warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law,' nor did many of the factual contentions have evidentiary support. (Code Civ. Proc., § 128.7(b)(2), (3).)" The court continued, "Plaintiff and his counsel presented no legitimate eviden[ce] to support the claim that Defendants' counsel had engaged in ethical misconduct in this case. Indeed, Plaintiff's counsel admitted he reviewed the documentation relating to the billing issue only cursorily before filing the motion, consciously deciding to forego the opportunity for a more detailed review. As Defendants point out in this motion, Plaintiff and his counsel accused Attorney Bailey of 'billing fraud' in a situation in which no 'bill' had been issued."

The trial court also stated that Pavone's opposition to the motion for sanctions focused on relitigating Hyde's motion for reconsideration, "claiming the court 'misunderstood the true nature of the motion.' " The court found that to the extent the motion could be construed as a motion for reconsideration, it was untimely. In addition, the court found Pavone bore sole "responsibility for the violations of sections 128.5 and 128.7" and denied the motion as against his client, Hyde. The court imposed sanctions jointly and severally on Pavone and his law firm, Pavone & Fonner, LLP, in the amount of $11,725 for the attorney's fees and costs incurred by McDermott and The Grove to respond to Pavone's baseless motion. In addition, the court imposed sanctions of $5,000 on Pavone and Pavone & Fonner, LLP payable to the court. Finally, the court ordered Pavone to report the sanctions to the State Bar in accordance with Business and Professions Code section 6068, subdivision (o)(3).

Pavone failed to appear at the September 26, 2024 hearing on the sanctions motion. That day, the trial court issued an order confirming its tentative ruling and ordering defendants to submit a proposed judgment within five days. The defendants sent a proposed order to all parties the same day, which quoted in its entirety the court's final order.[4] The court entered the proposed order as a formal, final order on October 16, 2024. Pavone filed a timely notice of appeal from that order on December 16, 2024.

---

[4] On October 3, 2024, Pavone filed a "Supplemental Objection To Proposed Order," which did not address the order. Instead, the objection asserted Pavone had been in contact with the San Diego Superior Court's clerk about the court's budget prior to the trial court's imposition of the $5,000 sanction order and suggested that the clerk had been in contact with the judge in this matter prior to that decision. The objection also attached Pavone's e-mail communications with the clerk.

7

DISCUSSION

Pavone's arguments on appeal are difficult to discern and rife with repetition, obscure references, and baseless allegations.[5] He asserts that Bailey "engaged in a complex of ethical misconduct in relation to his position that Hyde owed an additional $13,565 in attorney's fees, where there was no possibility that such an amount was owed." Pavone appears to argue that for this reason, his "Motion to Enforce Ethical Violations Against" Bailey was supported by facts and the law, and that the court's determination that the motion was frivolous and contained baseless factual and legal contentions was an abuse of discretion. Thus, according to Pavone, the sanctions imposed against him and his law firm must be reversed. We disagree.

I

"Under … section 128.7, a court may impose sanctions for filing a pleading if the court concludes the pleading was filed for an improper purpose or was indisputably without merit, either legally or factually. (*Guillemin v. Stein* (2002) 104 Cal.App.4th 156, 168.) The court here imposed sanctions based on its finding that the claims [asserted by Pavone in his ethics motion] were legally and factually frivolous. A claim is factually frivolous if it is 'not well grounded in fact' and it is legally frivolous if it is 'not warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law.' (*Id*. at p. 167.) In either case, to obtain sanctions, the moving party must show the party's conduct in asserting the claim was objectively unreasonable. (*Ibid*.) A claim is objectively unreasonable if 'any

_____

5　　After the respondent's brief was filed, Pavone brought a motion to strike a portion of the brief on the grounds that it failed to provide sufficient citations to the record or case citations. A ruling on the motion was deferred to this panel. The motion to strike is denied.

reasonable attorney would agree that [it] is totally and completely without merit.' "[6] (*Peake v. Underwood* (2014) 227 Cal.App.4th 428, 440 (*Peake*).)

" 'A court has broad discretion to impose sanctions if the moving party satisfies the elements of the sanctions statute.' [Citation.] [However,] section 128.7 should be utilized only in 'the rare and exceptional case where the action is clearly frivolous, legally unreasonable or without legal foundation, or brought for an improper purpose.' [Citation.] 'Because our adversary system requires that attorneys and litigants be provided substantial breathing room to develop and assert factual and legal arguments, [section 128.7] sanctions should not be routinely or easily awarded even for a claim that is arguably frivolous' (*Peake, supra*, 227 Cal.App.4th at p. 448), and instead 'should be "made with restraint." ' "[7] (*Kumar v. Ramsey* (2021) 71 Cal.App.5th 1110, 1120 (*Kumar*).)

---

[6] "Section 128.7 was modeled on rule 11 of the Federal Rules of Civil Procedure (28 U.S.C.), and many of the provisions of the statute and rule are identical. [Citation.] Accordingly, federal case law construing rule 11 of the Federal Rules of Civil Procedure 'is persuasive authority' with regard to the meaning of section 128.7. [Citation.] Thus, under section 128.7 and rule 11 'there are basically three types of submitted papers that warrant sanctions: factually frivolous (not well grounded in fact); legally frivolous (not warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law); and papers interposed for an improper purpose.' " (*In re Marriage of Sahafzadeh-Taeb & Taeb* (2019) 39 Cal.App.5th 124, 133, fn. 4 (*Sahafzadeh-Taeb & Taeb*).)

[7] In contrast to sanctions available under section 128.7, under section 128.5 " '[t]here must be a showing not only of a meritless or frivolous action or tactic, but also of bad faith.' " (*Sahafzadeh-Taeb & Taeb, supra*, 39 Cal.App.5th at p. 136.) Because we conclude the trial court did not abuse its discretion in determining that Pavone's motion asserting ethical violations by Bailey was unsupported by fact or law under section 128.7, we do not reach the issue of whether the sanctions were also appropriate under section 128.5.

" 'We review a section 128.7 sanctions award under the abuse of discretion standard. [Citation.] We presume the trial court's order is correct and do not substitute our judgment for that of the trial court. [Citation.]' [Citation] 'The scope of discretion,' however, 'always resides in the particular law being applied, i.e., in the "legal principles governing the subject of [the] action ...." ' ' (*City of Sacramento v. Drew* (1989) 207 Cal.App.3d 1287, 1297.) 'Action that transgresses the confines of the applicable principles of law is outside the scope of discretion and we call such action an "abuse" of discretion.' " (*Kumar, supra*, 71 Cal.App.5th at p. 1121.)

II

Pavone's motion asserted that Bailey violated his ethical obligations to his clients and opposing counsel by agreeing to Pavone's request to see billing records that *might* support a subsequent request for attorney's fees under the anti-SLAPP statute. As the trial court concluded, Pavone's allegation that this conduct was a violation of Bailey's ethical obligations was both factually and legally without merit, and objectively unreasonable. As the trial court found, " 'any reasonable attorney would agree that [it] is totally and completely without merit.' " (*Peake, supra,* 227 Cal.App.4th at p. 440.)

As discussed in the background section of this opinion, after the trial court adjudicated McDermott and The Grove's motion for sanctions related to Pavone's motion for reconsideration of the court's order granting the anti-SLAPP motion, Bailey communicated a settlement offer to Pavone. In the context of this offer, and in response to Pavone's question, Bailey clarified that the offer did not encompass all attorney's fees incurred by his clients in opposing the motion for reconsideration, leaving open the possibility that his clients *might* attempt to recover additional fees under the fee-shifting provision of the anti-SLAPP statute. This clarification prompted Pavone to

request Bailey's billing records. Bailey consented to the request by showing the records to Pavone during a video conference. Inexplicably, this meeting prompted Pavone's "ethics" motion underlying the sanction awards at issue in this appeal.

As the trial court found, there was no ethical violation by Bailey in his conduct in agreeing to show his billing records related to his client's opposition to Pavone's failed motion for reconsideration. Indeed, Bailey was under no obligation to provide this information in the first instance. As in the trial court, on appeal, Pavone fails to provide any factual or legal basis to support this foundational problem with his motion. Instead, he repeats his arguments that Bailey's act of showing him the billing spreadsheet was an attempt to perpetrate a fraud on Pavone and his client. Pavone, however, has provided no factual or legal basis to show that Bailey's actions were fraudulent or unethical in any way.

As Bailey explains in his appellate brief, the record does not show Bailey concealed or misrepresented the attorney's fees his clients paid him in connection with the case. At Pavone's request, Bailey voluntarily gave Pavone the opportunity to view his billing records. The records were shown to Pavone in the context of a settlement negotiation between counsel for opposing parties. There is no evidence in the record to suggest that Bailey's assertion that his clients might be able to recover some or all of the fees in further litigation was a false statement or attempt to defraud either Bailey's clients or the opposing party. As Bailey explains, it was "an asserted legal entitlement made in an adversarial setting, one which Appellants were free to reject and contest," and which "never came to fruition because Respondents never ... filed an additional Motion to recover those additional

11

fees." Additionally, Pavone makes no claim that Bailey did not bill his client for the hours or that his clients did not pay the fees.

The only evidence Pavone points to in support of his assertion of ethical misconduct is his own declaration, submitted in support of his motion, recounting the e-mail conversation between himself and Bailey, describing the subsequent video conference concerning the attorney's fees, and attaching the e-mail conversation itself. Again, this was not evidence of any wrongdoing by Bailey and did not factually support Pavone's motion that resulted in the sanctions at issue in this appeal. Pavone also argues that "a party being asked to pay the other side's legal fees is entitled to *a copy* of the billing detail; more commonly, counsel obtains one automatically when the opposing attorney files the fee motion." This statement highlights the flaw in Pavone's argument. Contrary to his assertion, neither Pavone nor his client was asked to pay the fees that Pavone requested to see; nor did Bailey or his clients file a motion to recover those fees.

Pavone next argues that the trial court's finding that he did not submit relevant legal authority in support of his motion was "false" because he "tendered an extensive set of ethics rules and cases to support" his theory. Pavone, however, does not explain what rules or cases he proffered in support of his motion or the arguments therein. Rather, he asserts only that the attorney's fees shown to him during the video conference were "a fabricated debt ... subject to ethical regulation under Rules 4.1 and 8.4., as per well-established case law."

Pavone also asserts that the trial court's determination that there was no evidence of billing fraud because there was no bill at issue, "is an unserious legal argument," and contends billing fraud includes "situations when [a lawyer's] time sheets are inaccurate, when he inflates his time, or

12

other ways."  Pavone then provides citations to several cases from other jurisdictions involving claims of billing fraud.  Pavone does not explain how these cases relate to this one, likely because none provide support for Pavone's contention that Bailey engaged in any unethical conduct that would support his motion.  (See e.g., *Tadros v. City of Union City* (D.N.J. 2011, No. 10-CV-2535 (DMC)(JAD)) 2011 U.S. Dist. Lexis 35714, at pp. *24-25 [dismissing claim of "billing fraud" asserted by former client against defendant attorneys at the pleading stage]; *Stancil v. First Mt. Vernon Indus. Loan Ass'n* (D.D.C.App. 2014) 131 A.3d 867, 870 [dismissing fraud claim by borrower based on payment of attorney's fees against bank for failure to adequately state claim]; *DeLeo v. Nusbaum* (Conn. 2004) 49 Conn. Supp. 366, 387–388 [affirming directed verdict for claim for negligent legal representation based on statute of limitations]; *Henry v. United States* (C.D.Ill. 2022, 21-3244) 2022 U.S. Dist. Lexis 16740, at p. *6 [dismissing claim of legal malpractice and billing fraud]; *In re Appler* (D.C.App. 1995) 669 A.2d 731, 734 [attorney disciplinary proceeding, which addressed claims of billing fraud among other malfeasance]; and *Office of Lawyer Regulation v. Maynard* (Wis. 2009) 2009 WI 106, 322 Wis.2d 53, 58 [same].)

In sum, Pavone has failed to present any authority to show a basis in the law for his motion.  Rather, the record before this court supports the trial court's determination that the motion was " 'not warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law.' " (*Peake, supra*, 227 Cal.App.4th at p. 440.)  The court's determination that Pavone's motion was frivolous was not an abuse of the court's discretion.

Finally, Pavone also complains the trial court's decision to treat his ethics motion as a motion for reconsideration reflects a misunderstanding of the law.  This argument is also without merit.  The court stated simply and

13

correctly that Pavone's opposition to the sanctions motion asserted the court misunderstood the arguments of his ethics motion. The court then noted that to the extent Pavone was attempting to relitigate the court's denial of that prior motion, the time for such a reconsideration had passed. This was an accurate statement of the law and facts, and it provides no basis for this court to overturn the trial court's ruling on the motion for sanctions. (See *Okorie v. Los Angeles Unified School Dist.* (2017) 14 Cal.App.5th 574, 600, disapproved on another ground in *Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1011 ["it is not this court's role to construct theories or arguments that would undermine the judgment and defeat the presumption of correctness. Rather, an appellant is required to present a cognizable legal argument in support of reversal of the judgment"].)

### III

In a separate section of his briefing, Pavone challenges the $5,000 sanction imposed and made payable to the court.[8] Without further explanation, he asserts that because his "ethics motion was appropriate under the circumstances, there was no foundation for the trial court to impose an additional $5,000 penalty on top of its $11,725 sanction" to Bailey.

---

[8] Prior to the parties' briefing, this court issued an order noting that a sanction award "for $5,000 is appealable 'after the entry of final judgment in the main action' " and requesting "the parties address in their briefings on the merits the appealability of the order directing payment of the $5,000 penalty to the court." Neither party complied with this request. However, given the circumstances of the case, we exercise our discretion to treat Pavone's appeal from this sanction order as a petition for extraordinary writ. (See *Manlin v. Milner* (2022) 82 Cal.App.5th 1004, 1022 ["[T]he monetary sanctions issue is final between the parties ... and the record on them is sufficiently developed to afford adequate appellate review. To dismiss the appeal rather than exercising our power to reach the merits through a mandate proceeding would, under the unusual circumstances before us, be ' " 'unnecessarily dilatory and circuitous.' " ' "].)

Further, he argues, "given the wide body of case law supporting the ethical enforcement of false statements by attorneys, the broad applications of these rules themselves, and Bailey's obvious ethical malfeasance ... the underlying motion was not only not frivolous, it was accurate."

As discussed, Pavone has not shown the trial court abused its discretion by imposing sanctions on him and his law firm with respect to the attorney's fees and costs incurred by McDermott and The Grove to respond to Pavone's baseless ethics motion. Rather, the court's finding that there was no legal or factual basis for Pavone's motion was supported by the record before the court. Because Pavone presents no other argument to challenge the separate $5,000 sanction, his appeal with respect to this sanction also fails.

In addition, we agree with McDermott and The Grove that the court did not abuse its discretion by imposing the $5,000 sanction payable to the court. Section 128.7, subdivision (c) provides authority for the imposition of sanctions when a motion is brought for an improper purpose, the "legal contentions therein are" not "warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;" or "[t]he allegations and other factual contentions" do not "have evidentiary support ...." The sanctions imposed by the court must be "limited to what is sufficient to deter repetition of this conduct or comparable conduct by others similarly situated" and "the sanction may consist of, or include, directives of a nonmonetary nature, *an order to pay a penalty into court*, or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorney's fees and other expenses incurred as a direct result of the violation." (§ 128.7, subd. (d), italics added.) The trial court's

15

imposition of this sanction was authorized by section 128.7, subdivisions (c) and (d), and the sanctions were appropriate to deter additional conduct of this kind by Pavone in the future.

IV

After completion of briefing, we issued an order advising Pavone we were considering imposing sanctions against him for prosecuting a frivolous appeal and provided Pavone an opportunity to file a written opposition. (§ 907; Cal. Rules of Court, rule 8.276.) Pavone filed an opposition the same day our order was issued stating only, "A motion imposing almost $17,000 in sanctions, premised on the employment of meaningless jargon at the trial level and defended on appeal by vacuous generalities, leaves no room for a court to honestly find the appeal frivolous. As detailed by the briefs, it was the trial ruling that lacked any merit, not Appellants' motion." The opposition also attached Pavone's opening and reply briefs.

Ten days later, Pavone filed a "supplemental response" consisting of a declaration in which he asserts, "it appears that the California Supreme Court has in fact suspended operation of the discipline system at its level. Now 2/3 of the way through the month, no substantive discipline orders have been issued since revelations I disclosed on December 25, 2025 to the Review Department." Pavone continues that he has "inventoried 2,080 decisions" of the Supreme Court and concluded that it "always imposes the fines," and goes on to cite a series of "statistics" presumably about the State Bar's disciplinary system.

Pavone then states, "I would note for this specific court's benefit, however, that I have not forgotten that its referral of me to a corrupted discipline system after the *Willis* appeal resulted in my being charged with 2,017 ethics offenses. So, the members of this Court who signed any orders

16

during the *Willis* appeal can be fairly and accurately accused of being involved in one of the most massive abuses of judicial power in California legal history." He ends the declaration, "I reserve the right to file an action to shut down the entire State Bar discipline system – and I currently possess the evidentiary horsepower to accomplish exactly that – in light of the Court's threat to further administratively prosecute me via that system implied by its order of January 13, 2026."

A

This court has the express power to impose monetary sanctions on appeal. Under section 907, "[w]hen it appears to the reviewing court that the appeal was frivolous or taken solely for delay, it may add to the costs on appeal such damages as may be just." In addition, California Rules of Court, rule 8.276(a) gives this court the authority to "impose sanctions … on a party or an attorney for: [¶] (1) Taking a frivolous appeal or appealing solely to cause delay; [¶] (2) Including in the record any matter not reasonably material to the appeal's determination; [¶] (3) Filing a frivolous motion; or [¶] (4) Committing any other unreasonable violation of these rules." "[A]n appeal should be held to be frivolous only when it is prosecuted for an improper motive—to harass the respondent or delay the effect of an adverse judgment—or when it indisputably has no merit—when any reasonable attorney would agree that the appeal is totally and completely without merit." (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650 (*Flaherty*).)

"In determining whether an appeal indisputably has no merit, California cases have applied both subjective and objective standards. The subjective standard looks to the motives of the appealing party and his or her attorney, while the objective standard looks at the merits of the appeal from a reasonable person's perspective. [Citation.] Whether the party or attorney

17

acted in an honest belief there were grounds for appeal makes no difference if any reasonable person would agree the grounds for appeal were totally and completely devoid of merit." (*Kleveland v. Siegel & Wolensky, LLP* (2013) 215 Cal.App.4th 534, 556–557 (*Kleveland*).)

When sanctions are warranted, we determine the amount by considering " ' "the amount of respondent's attorney fees on appeal; the amount of the judgment against appellant; the degree of objective frivolousness and delay; and the need for discouragement of like conduct in the future." ' " (*Kleveland, supra*, 215 Cal.App.4th at p. 558.)  Importantly here, respondents "are not the only parties damaged when an appellant pursues a frivolous claim.  Other appellate parties, many of whom wait years for a resolution of bona fide disputes, are prejudiced by the useless diversion of this court's attention.  [Citation.]  In the same vein, the appellate system and the taxpayers of this state are damaged by what amounts to a waste of this court's time and resources.  [Citations.]  Accordingly, an appropriate measure of sanctions should also compensate the government for its expense in processing, reviewing and deciding a frivolous appeal." (*Finnie v. Town of Tiburon* (1988) 199 Cal.App.3d 1, 17; see also *Flaherty, supra*, 31 Cal.3d at p. 650 ["An appeal taken for an improper motive represents a time-consuming and disruptive use of the judicial process.  Similarly, an appeal taken despite the fact that no reasonable attorney could have thought it meritorious ties up judicial resources and diverts attention from the already burdensome volume of work at the appellate courts."].)

B

As discussed, Pavone's motion in the trial court prompting the sanctions he now appeals was frivolous and the court's decision to impose sanctions for that conduct was appropriate.  We also find that his appeal to

18

this court from that ruling is frivolous.  Although we recognize our power to impose sanctions should be used sparingly to deter only the most egregious conduct (see *Flaherty, supra*, 31 Cal.3d at pp. 649–650), we find that sanctions are fully warranted here.

From an objective perspective, the arguments Pavone asserts have no merit whatsoever.  There is no basis in the record to support his assertion that Bailey engaged in any inappropriate conduct.  As discussed, the trial court properly found Pavone's motion was " 'not warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law.' " (*Peake, supra*, 227 Cal.App.4th at p. 440.)  Moreover, Pavone's appellate filings show an attempt to litigate in this court the disciplinary proceedings against him that are currently before the California State Bar.  This is unquestionably an improper forum for such arguments, and this conduct supports a finding of subjective bad faith on Pavone's part.  (See e.g., *Weber v. Willard* (1989) 207 Cal.App.3d 1006, 1010 ["Repeated litigation of matters previously determined by final judgment constitutes harassment and should be penalized."].)  For these reasons, and in an effort to prevent future misconduct by Pavone, we impose sanctions against him for prosecuting this frivolous appeal.  (§ 907; Cal. Rules of Court, rule 8.276.)  The respondents have not requested an award of sanctions payable to them, but we will impose sanctions payable to the clerk of this court to compensate the state for the cost to the taxpayers of processing a frivolous appeal.  (*In re Marriage of Gong & Kwong* (2008) 163 Cal.App.4th 510, 520 (*Gong & Kwong*).)

A cost analysis undertaken by the clerk's office for the Second District estimated that the cost of processing an appeal resulting in an opinion was approximately $8,500 in 2008, while another calculation made in 1992 gave a conservative estimate of $5,900 to $6,000.  (*Gong & Kwong, supra*, 163

19

Cal.App.4th at p. 520.) According to the United States Bureau of Labor Statistics inflation calculator, these figures are equivalent to approximately $13,000 in today's dollars. (CPI Inflation Calculator, U.S. Bureau of Labor Statistics (2025) <https://www.bls.gov/data/inflation_calculator.htm> [as of February 26, 2026], archived at: <https://perma.cc/YM2U-5MH3>.) We will therefore impose sanctions against Pavone in the amount of $13,000, payable to the clerk of this court. This opinion shall serve as a written statement of reasons for imposing the sanctions.

## DISPOSITION

The order is affirmed.  As sanctions for prosecuting this frivolous appeal, appellant's counsel Benjamin Pavone is ordered to pay $13,000 in sanctions payable to the clerk of this court no later than 30 days after the remittitur issues.  As required by Business and Professions Code section 6086.7, subdivision (a)(3), the clerk of this court is directed to forward a copy of this opinion to the State Bar of California upon issuance of the remittitur.  This disposition serves as notice to counsel that the imposition of sanctions will be reported to the State Bar of California.  (Bus. & Prof. Code, § 6086.7, subd. (b).)  Attorney Benjamin Pavone is also ordered to personally report the sanctions to the State Bar of California.  (Bus. & Prof. Code, § 6068, subd. (o)(3).)  The costs of appeal are awarded to Respondents.


McCONNELL, P. J.

WE CONCUR:


BUCHANAN, J.


CASTILLO, J.

21